Defendant-appellant Jeffery Richard appeals from his convictions for possession of drugs (R.C. 2925.11), trafficking in cocaine (R.C. 2925.03) and possession of criminal tools (R.C. 2923.24). Defendant contends the trial court erred in failing to suppress illegally seized property; in not requiring the State to identify the specific purchasers of illegal drugs; in denying defendant's motion to acquit; and in ordering forfeiture of property seized. For the reasons hereinafter stated, we affirm.
On January 12, 1999, defendant filed a motion to suppress and for return of illegally seized property. Subsequently, on February 11, 1999, the trial court held a hearing on this motion. At the hearing, the State presented the testimony of several members of the SWAT team who executed the search warrant. The defendant then presented the testimony of several witnesses who were present in the 8407 Wade Park home at the time the SWAT team executed the search warrant: defendant Jeffrey Richard; Thomas Richard, defendant's brother and co-defendant; Challie Kelly, defendant's brother; and Jimmie Richard, defendant's father.
Calvin Williams, Sergeant of the SWAT team, testified that his unit was requested to gain entry for a search warrant to be executed at 8407 Wade Park, Cleveland. Sgt. Williams explained that the SWAT team was usually used on warrants that are deemed to be high risk. At the SWAT team briefing, prior to the action, the officers learned details about the premises to be searched. Specifically, they were informed that there were guns involved; there were children at the residence; there was a lot of recent police activity at the residence; there were drugs involved; and that there were several armed males that frequented the house and also lived in the house. When the team arrived at the house, they went onto the front porch, verified the address and gained access to the house by ramming the door. Sgt. Williams testified that before ramming the door he yelled, police as they always do and waited about five to six seconds. This testimony was corroborated in large part by SWAT team Officer Dennis Blotnik who participated in the action.
On cross-examination, Sgt. Williams explained that not only did they yell police but they also made a great deal of noise to emphasize the fact that they were the police. Furthermore, Williams testified that they waited about five to six seconds after announcing police, there was no reply, even though they knew there were people inside, before ramming the door.
Officer Rick Sheppard testified that he was also present as a member of the SWAT team on September 30, 1998. He was the designated doorman that evening and was responsible for the ram. He testified that he approached the door, squared up with it, yelled police, and then knocked on the door with the ram. When he got no answer, he hit the door open. He testified that the SWAT team was told that there were extensive drug sales going on in the house; that there were firearms in the house; and that on the evening before, detectives witnessed zone cars at the house in connection with shots fired. Officer Sheppard acknowledged that this information absolutely played a role in the way that the Swat team gained entry into the home. On cross-examination, Officer Sheppard explained that he waited about four seconds before ramming the door in. That was enough time to allow a response, but not enough time for the occupants to get to any guns.
Detective Richard Ruffin, the affiant on the 8407 Wade Park search warrant, testified regarding the surveillance that had been conducted prior to obtaining the warrant. He stated that the surveillance lasted about a week or two and that during this time the Street Crimes Unit conducted three controlled buys: one from Thomas Richard and two from Jeffery Richard. During one of the controlled buys, the informant had a brief conversation with Thomas Richard in the front yard of the home and then walked away without making an exchange. Thomas Richard then drove away in his beige Cutlass. He was followed to 8722 Beckman where he stayed approximately five to seven minutes before returning to 8407 Wade Park. The informant returned and purchased drugs from Thomas Richard. He testified that the reason SWAT was used to gain entrance was because there was believed to be a lot of weapons in the house and there was also a large volume of people in the house. Det. Ruffin further testified that it is easy to destroy narcotics prior to the entry of police. One of the suspects, Thomas Richard, also had a felonious assault arrest in 1995.
Detective Richard Milligan also testified about the circumstances that resulted in the surveillance of the area and the search warrant issued on the 8407 Wade Park premises. At the conclusion of Det. Milligan's testimony, the parties presented their closing arguments regarding the motion to suppress and return of illegally seized property. On February 25, 1999, the trial court ordered that two Cadillacs be returned to the defendant and Thomas Richard. Subsequently, on June 16, 1999, the trial court denied defendant's motion to suppress and for return of illegally seized property.
After several continuances, defendant's trial finally commenced on June 22, 1999. The State presented the testimony of several police officers who were involved in the execution of the search warrants for 8407 Wade Park and 8722 Beckman. Det. Milligan testified that they set up surveillance at 8407 Wade Park after receiving complaints from Crime Stoppers. During surveillance, they observed heavy pedestrian and vehicular traffic. With the aid of binoculars, they witnessed individuals visiting the residence engaging in hand-to-hand transactions in the front yard and porch area or coming and going from the house for a short period.
He described a controlled buy on September 23, 1998, with the assistance of a Confidential Reliable Informant (CRI). Det. Milligan and his partner Det. Terry Preston met with the CRI and set up the controlled buy which they observed through binoculars in the front yard.
After the first controlled buy, Det. Milligan testified that they continued their surveillance, and on September 28 and 30, 1998, second and third controlled buys were made from defendant with the assistance of a CRI. These buys were also witnessed and testified to by Det. Preston. The buy on September 30th occurred about two hours before the search warrant was executed for the purpose of placing the police buy money in the house.
Det. Milligan testified that he participated in the searches of 8407 Wade Park and 8722 Beckman. At Wade Park, he found a black vinyl leather-like pouch in the defendant's bedroom which contained five rocks of crack cocaine, $173 in U.S. currency and the police buy money from the last controlled buy. Three loaded guns were also located in that same bedroom, two under the mattress, a .380 automatic and a .38 caliber revolver. The third gun, a .25 caliber Raven, was located on the dresser. Det. Milligan testified that he knew this to be the defendant's bedroom based on the personal papers found there.
Det. Preston also testified regarding the surveillance of 8407 Wade Park, the controlled buys, the obtaining of the search warrant, and the execution of the warrant. He testified that during the execution of the warrant, he was accompanied by Sgt. James Lewis, Det. Milligan, Det. Ruffin, Det. Jamusca Britten, Det. Matthew Speights and other members of the SWAT team. He testified that the SWAT team is used in the execution of a search warrant when the situation is determined to be extremely dangerous. Det. Preston testified that at 8407 Wade Park a safe was found which they learned belonged to defendant. The safe contained $10,043 in cash and a tempered glass tube which is often used to cook or process crack cocaine.
Sgt. Lewis, Det. Ruffin, Det. Britten and Det. Speights also testified for the prosecution regarding the execution of the search warrant for 8407 Wade Park. At the conclusion of the State's case-in-chief, the defense moved for a Crim.R. 29 motion for acquittal. This motion was denied by the trial court as to the preparation of drugs for sale, possession of drugs, trafficking in cocaine and possession of criminal tools counts.
The defense then presented the testimony of Jimmie Richard, Dacia Love, Challie Kelly and Thomas Richard who were all present at 8407 Wade Park at the time the search warrant was executed. They all testified to the SWAT team's storming of the home with their guns pointed and ordering the men to the floor and the women and children to the couch.
On July 15, 1999, the jury returned its verdict finding defendant guilty of one count of preparation of drugs for sale (R.C. 2925.07), three counts of possession of drugs (R.C. 2925.11), two counts of trafficking in cocaine (R.C. 2925.03), and one count of possession of criminal tools (R.C. 2923.24). Defendant's post-trial motions for acquittal and for a new trial were denied by the trial court.
We will address defendant's assignments of error in the order presented.
 I. THE COURT ERRED IN DENYING THE MOTION TO SUPPRESS AND FOR THE RETURN OF ILLEGALLY SEIZED PROPERTY.
In his first assignment of error, defendant asserts that there was insufficient probable cause to support the search warrant issued for 8407 Wade Park. Defendant further asserts that the SWAT team's entry into the residence was unlawful because it failed to knock and announce. Defendant asserts that, as a result, the search of the home was unreasonable and any items seized during the search were inadmissible and should have been suppressed.
The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. When reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the reviewing court is only to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. State v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus, following Illinois v. Gates (1983),462 U.S. 213, 238-239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527. To determine the sufficiency of probable cause in an affidavit in support of a search warrant, the issuing judge must:
 [M]ake a practical, common-sense decision whether given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Id. at paragraph one of the syllabus. A reviewing court should accord great deference to the judge's determination of probable cause, and doubtful cases should be resolved in favor of upholding the warrant. Id.
In the instant case, the affidavit in support of the search warrant was signed by Det. Ruffin and states that over the past month, several citizens' complaints and a Crime Stoppers complaint were received by the police department that Tom Richards and his brother Jeff were trafficking in drugs at 8407 Wade Park Avenue. Surveillance of the residence commenced and very heavy pedestrian and vehicular traffic with suspected drug trafficking was observed at that location. The affidavit states that members of the police department observed a black male leave the premises in a beige Cutlass, drive to 8722 Beckman Avenue and a short time later return to 8407 Wade Park. Upon his return, the male was observed making hand-to-hand exchanges with individuals in the front yard and on the front porch of the premises. The affidavit expresses that this activity is indicative of drug trafficking. The affidavit also described the three controlled purchases by the CRI which confirmed that Thomas Richard and defendant were trafficking in crack cocaine at the premises.
We find, based on this information contained in the affidavit, that the judge had a substantial basis for concluding that sufficient probable cause existed for a search warrant. In this finding, we must note the great deference that must be accorded to the judge's probable cause determination and that any doubts are to be resolved in upholding the warrant.
Defendant further asserts that the SWAT team's unannounced entry into the residence was unlawful. We disagree.
The knock and announce rule on which defendant relies is codified in R.C.2935.12(A), which provides for forcible entry in executing a search warrant:
 [W]hen executing a search warrant, * * * the law enforcement officer, * * * may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make the arrest or to execute the search warrant * * * he is refused admittance, but the law enforcement officer * * * executing the search warrant shall not enter a house or building not described in the warrant.
In the instant case, there is conflicting testimony regarding whether the SWAT team knocked on the door and announced its presence prior to knocking down the door and entering the residence. Even if we assume that the SWAT team failed to knock and announce in violation of R.C. 2935.12(A), such an unannounced intrusion may still be reasonable under theFourth Amendment.
In State v. King (Dec. 2, 1999), Cuyahoga App. No. 76373, this Court recently addressed the reasonableness of a no knock entry of a residence. In King, we stated:
 The United States Supreme Court recently addressed the application of the knock and announce rule with regard to the reasonableness standard for searches under the Fourth Amendment. See Richards v. Wisconsin (1997), 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615. In Richards, the Court determined that in felony drug investigations a no knock entry, wherein the police are justified in dispensing with the knock and announce requirement, may be done where the police have,
 a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing destruction of evidence.
 520 U.S. at 394, 117 S.Ct. at 1421.
 Richards further stated that whenever the reasonableness of a no-knock entry is challenged, this reasonable suspicion showing by the police is not a high one and that the reasonableness of the officer's decision must be evaluated as of the time they entered the dwelling. 520 U.S. at 394-395, 117 S.Ct. at 1422.
In the instant case, Sgt. Williams of the SWAT team testified at the suppression hearing that prior to executing the warrant, they were briefed that this was a drug case, that there were guns involved, and that there were several armed males that frequented the house and also lived in the house. Det. Ruffin testified that the reason the SWAT team was used to gain entry to the 8407 Wade Park residence was because it was believed that there were a lot of weapons in the house and there was also a large volume of people in the house. Officer Sheppard further testified that the SWAT team was told that there were extensive drug sales going on in the house, that there were firearms in the house and that on the evening before detectives witnessed zone cars at the house in connection with shots fired. Officer Sheppard further acknowledged that this information absolutely played a role in the way that the team gained entry into the house.
We find that the SWAT team was sufficiently justified in failing to adhere to the knock and announce requirement as there was a reasonable suspicion that knocking and announcing its presence, under these circumstances, would have been dangerous to the officers involved and perhaps the inhabitants themselves. During the one or two week surveillance of the residence, the police obtained a significant amount of information regarding the drug and gun activity that took place in the home. Based on the exigent circumstances in this case, we find that it was reasonable for the SWAT team to conclude that an announced entry into the residence would have allowed the occupants to obtain their weapons and/or destroy evidence. Regardless of whether the SWAT team announced its presence, this entry was reasonable under the Fourth Amendment.
Defendant also asserts that the search warrant was unconstitutionally executed because occupants of the residence were mistreated by the SWAT team during the execution of the search warrant. Specifically, defendant points out the officer's entry into the home with their guns drawn and then forcing the male occupants to the floor and handcuffing them.
The record reflects that there was also conflicting testimony regarding the force used in this case. Thomas Richard testified that he was forced to the ground, jumped on, punched and handcuffed by an officer. Defendant, Challie Kelly, Jimmie Richard and Dacia Love also testified that the occupants of the house were abused by the officers. However, the officers testified that they go in with their guns pointed outward to control the situation and discourage occupants from arming themselves, fleeing or destroying evidence. The officers further testified that no one was roughed up during the execution of the search warrant. It is well established that the weight given to the testimony and the credibility of the witnesses is within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
We find that the trial court could justifiably find that the search of the home was reasonable based on the circumstances that existed at the time of the execution of the search warrant. Thus, the trial court correctly denied defendant's motion to suppress.
Assignment of Error I is overruled.
 II. THE COURT ERRED WHEN IT FAILED TO REQUIRE THE STATE TO DIVULGE THE IDENTITY OF THE ALLEGED PURCHASER OF THE DRUGS IN THE VARIOUS SALE COUNTS EVEN TO THE COURT, AND THUS PROVE HE EXISTED; AND TO ESTABLISH THAT THE THINGS ATTRIBUTED TO THIS PERSON HAD A BASIS IN FACT.
The standard of review that we must apply to this case is whether the trial court abused its discretion in refusing to order the State to disclose the identity of the confidential informant. State v. Brown
(1992), 64 Ohio St.3d 649; State v. Feltner (1993), 87 Ohio App.3d 279,281. We will not reverse a trial court's decision denying a request for disclosure absent an abuse of discretion. Feltner, supra, at 282. The term abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
A criminal defendant is entitled to disclosure of a confidential informant's identity only where the informant's testimony is either: (1) vital to establishing an essential element of the offense charged; or (2) helpful or beneficial to the accused in preparing a defense. State v.Williams (1983), 4 Ohio St.3d 74, syllabus. If the informant's degree of participation is such that the informant is essentially a State's witness, the balance tilts in favor of disclosure. Id. at 76. However, where disclosure is not helpful to the defense, the prosecution need not reveal the informant's identity. Id. The defendant bears the burden of establishing the need for learning the informant's identity. Feltner,supra; State v. Parsons (1989), 64 Ohio App.3d 63, 69.
 The question of disclosure of a confidential informant becomes a balancing of competing interests. The defendant's right to confront his or her accusers, and the state's right to preserve the anonymity of informants. State v. Phillips (1971), 27 Ohio St.2d 294. The underlying thought process relative to the informants' privilege is discussed in State v. Roe
(1971), 26 Ohio St.2d 243, 246, 271 N.E.2d 296:
 * * * The purpose of the privilege is the furtherance and protection of the public in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and, by preserving their anonymity, encourage them to perform that obligation. See Roviaro v. United States
(1957), 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639.
State v. Crawford (June 11, 1998), Cuyahoga App. No. 72893, unreported.
Defendant denied selling drugs to anyone on the dates of the controlled buys, and therefore, he had a material need for the informant's testimony. Det. Milligan and Det. Preston testified that they searched the CRI, gave him the buy money, observed the CRI meet with defendant, and observed the CRI return with crack cocaine and without the buy money. Defendant has failed to show that disclosure of the CRI's identity was vital to establishing an essential element of the offenses charged or was helpful in preparing his defense. The trial court's denial of defendant's request for disclosure was based on a balancing of the public interest and protecting the public flow of information against defendant's right to prepare his defense. We cannot find that this decision was unreasonable, arbitrary or unconscionable to constitute an abuse of the trial court's discretion.
Assignment of Error II is overruled.
 III. THE COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL MADE AT THE END OF THE STATE'S CASE AND RENEWED AT THE CLOSE OF ALL THE EVIDENCE.
Defendant asserts that the trial court erred in not granting the Crim.R. 29 motion for acquittal because there was insufficient evidence to support a conviction. We disagree.
Crim.R. 29(A) provides that a trial court shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses. A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. See State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The standard of review with regard to the sufficiency of evidence was recently summarized by the Supreme Court in State v. Smith (1997),80 Ohio St.3d 89, 113, as follows:
 Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict, State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546, whereas the [w]eight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' (Emphasis sic.) Id. at 387, 678 N.E.2d at 546.
 In reviewing the record for sufficiency, [t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. * * *
Defendant asserts that there was insufficient evidence to support his conviction for possession of drugs because it was not established beyond a reasonable doubt that the drugs in the black pouch found in his bedroom were his. Defendant asserts that there was another person in the bedroom, and therefore, the drugs cannot be attributed to him beyond a reasonable doubt.
During the State's case-in-chief, Det. Milligan and Det. Preston testified that they observed the CRI make a hand-to-hand transaction with the defendant in the front yard of the residence. Shortly thereafter, the search warrant was executed during which Det. Milligan found a black pouch in defendant's bedroom which contained five rocks of crack cocaine and the police buy money used by the CRI. The defense moved for a Crim.R. 29 motion for acquittal at the conclusion of the State's case, and it was denied by the trial court.
Considering these facts in a light most favorable to the prosecution, it was reasonable for a trier of fact to conclude that the black pouch containing the drugs and the buy money belonged to the defendant. We find that there was sufficient evidence presented during the State's case to establish the requisite elements of possession of drugs beyond a reasonable doubt. Therefore, the trial court properly overruled defendant's Crim.R. 29(A) motion for acquittal.
Assignment of Error III is overruled.
 IV. THE COURT ERRED IN ORDERING THE FORFEITURE OF THE APPELLANT'S FUNDS SEIZED DURING THE SEARCH OF THE WADE PARK RESIDENCE.
In his final assignment of error, defendant asserts the State failed to establish a sufficient nexus between the $10,043 found in the safe and any drug activity. This money was found along with a tempered glass tube of a kind which is often used to cook or process crack cocaine.
We find that pursuant to R.C. 2933.41(C), defendant lost the right to possession of the money as there was a sufficient showing that the money was used in the commission of drug offenses. We also find that the $10,043 constituted contraband pursuant to R.C. 2933.43(A).
R.C. 2933.41(C)(1) provides that a person loses any right that he or she may have to the possession and ownership of property if the property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and the person is a conspirator, accomplice, or offender with respect to the offense. Furthermore, R.C. 2901.01(13)(e) defines contraband as:
 Any controlled substance as defined in section 3719.01
of the Revised Code, or any device, paraphernalia, money as defined in section 1301.01 of the Revised Code, or other means of exchange that has been, is being, or is intended to be used in an attempt or conspiracy to violate, or in a violation of, Chapter 2925 or 3719 of the Revised Code.
We find that it was reasonable to conclude that the $10,043 was associated with the drug activity at the 8407 Wade Park residence. Several witnesses testified to the significant amount of drug activity taking place at the home. Furthermore, this large sum of cash ($10,043) was found in the safe with a tempered glass pipe that is used for preparing crack cocaine. There was a sufficient showing that the cash was used in the commission of drug trafficking, and therefore, the trial court correctly determined that it was contraband subject to forfeiture.
Assignment of Error IV is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and BLACKMON, J., CONCUR.
 ______________________ JAMES M. PORTER, JUDGE