OPINION
{¶ 1} Dusty Lawson ("appellant"), appeals the April 20, 2001 judgment entry of the Lake County Common Pleas Court denying his Crim.R. 29 motion to dismiss count one of his indictment. Appellant also appeals the Feb. 2, 2001 entry denying his request to subpoena two confidential informants at his suppression hearing, and the Nov. 22, 2000 entry denying his request that the trial court reveal the identities of the two confidential informants. For the following reasons, we affirm the decision of the trial court in this matter.
 {¶ 2} The relevant facts of this case center around the Lawson family's operation of an automotive "chop shop" in Painesville Township, Ohio.
 {¶ 3} Ivana Schultz and her son Zachary Gibbs, were friends of the Lawson family throughout the course of events leading up to the arrest and prosecution of appellant. The record indicates that Gibbs' grandfather owned the storage bay used by the Lawson family as the hub of their illegal automotive operations. During their friendship with the Lawsons, Schultz and Gibbs became privy to appellant's illegal activity through both casual conversation and first hand observation.
 {¶ 4} The record indicates that Schultz and Gibbs came to learn specifically of two stolen vehicles in the possession of the Lawson family. The first vehicle was a 1997 Dodge Ram Pickup, stolen from a movie theater on January 24, 1999. The second vehicle was a 1996 Ford F-250 Pickup, stolen in March of 2000. Once learning of the Lawson family's illegal activities, Schultz and Gibbs proceeded to tip off the local police as to the location of the two vehicles. The tips provided by Schultz and Gibbs led the authorities directly to the two stolen vehicles. On March 17, 2000, the Geauga County Sheriff's Department found the steering column and air bag assembly from the 1997 Dodge Ram sitting in the Lawsons' storage bay at Gibbs Industrial Parkway. On March 20, 2000, Lake County authorities found the 1996 Ford F-250 parked in a lot across the street from the apartment complex where the Lawson family lived.
 {¶ 5} As a result, on August 25, 2000, appellant was indicted by the Lake County Grand Jury on the following charges: one count of receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51; one count of receiving stolen property, a felony of the fifth degree, in violation of R.C. 2913.51; and three counts of tampering with vehicle identification numbers, each a felony of the fifth degree, in violation of R.C. 4549.62.
 {¶ 6} During the discovery phase of appellant's case, the State of Ohio ("appellee") listed two confidential informants (Schultz and Gibbs) on its witness list. On November 2, 2000, appellant motioned the trial court to reveal the identities of the confidential informants. The trial court denied that motion on Nov. 22, 2001. On December 18, 2001, a hearing was held on appellant's Motion to Suppress. At that hearing, appellant attempted to subpoena two witnesses (Schultz and Gibbs) thought to be the confidential informants. Prior to allowing appellant to subpoena the two witnesses, the trial court ordered both parties to brief the issue of whether the subpoena was proper. Upon review of the briefs, the trial court denied appellant's attempt to subpoena the confidential informants in an entry journalized on Feb. 6, 2001.
 {¶ 7} On March 9, 2001, a jury convicted appellant on both counts of receiving stolen property and two counts of tampering with vehicle identification numbers. Appellant was acquitted on the remaining charge of tampering with vehicle identification numbers. Appellant was then sentenced by the trial court in an entry journalized on April 20, 2001. This timely appeal followed, and appellant asserts three assignments of error for our review.
 {¶ 8} "[1.] The trial court committed prejudicial error by failing to order the state to disclose the identities of the confidential informants.
 {¶ 9} "[2.] The trial court erred by denying the Appellant the right to present the testimony of the two confidential informants during the motion to suppress hearing.
 {¶ 10} "[3.] Where the state fails to establish that the accused had possession of a stolen vehicle or parts thereof the trial court errs by denying the accused's Rule 29 Motion in relation to that count of the indictment."
 {¶ 11} A trial court's decision to deny a defense request for the disclosure of an informant's identity will not be reversed on appeal absent an abuse of discretion. State v. Elersic (Nov. 21, 2001), 11th Dist. Nos. 2000-L-062 and 2000-L-164, 2001 Ohio App. LEXIS 5210. An abuse of discretion is more than an error of law or judgment; it implies that the action of the trial court was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 12} The focus of appellant's first assignment of error revolves around Crim.R. 16(B)(1)(e). Crim.R. 16(B)(1)(e) states in pertinent part: "Upon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendants a written list of names and addresses of all witnesses whom the prosecuting attorney intends to call at trial, * * *, which record is within the knowledge of the prosecuting attorney. Names and addresses of witnesses shall not be subject to disclosure if the prosecuting attorney certifies to the court that to do so may subject the witness or others to physical or substantial economic harm or coercion."
 {¶ 13} Appellant argues that he was prejudiced by the state's certification of the confidential informants. We disagree. The question of whether the identity of an informant must be disclosed involves the balancing of competing interests. State v. Williams (1983),4 Ohio St.3d 74, 75. Despite the importance of the right of confrontation, such right must be subject to the state's right to preserve the anonymity of confidential informants under certain circumstances. Id. The privilege of anonymity recognizes "the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and, by preserving their anonymity, encourage them to perform that obligation." State v. Roe (1971), 26 Ohio St.2d 243,246, quoting Rovario v. United States (1957), 353 U.S. 53. It is not reversible error on the part of a trial court "to refuse to order the disclosure of the identity * * * where such disclosure would not be helpful and beneficial to the accused in making a defense to a criminal charge lodged against him." State v. Beck (1963), 175 Ohio St. 73, paragraph two of the syllabus This court has held that the defendant bears the burden of establishing the need for learning the identity of an informant. Elersic, supra, at 18. Furthermore, the disclosure of an informant's identity is not required where the informant did not actively participate in the criminal activity. State v. Bays (1999),87 Ohio St.3d 15, 25.
 {¶ 14} Appellant has failed to provide any evidence to support his claim that he was prejudiced by the trial court's decision not to reveal the identities of the informants. Appellant claims that appellee's certification of the informants was improper. We disagree. In fact, the record indicates that appellant's father threatened Schultz and Gibbs at gunpoint. The transcript of the trial indicates Schultz testified to the following: "And Zach and me was sitting on the couch, * * *. Pops went into the back room, * * *, and he I (sic) got a shotgun or rifle, and pointed it right here at me and said `witnesses don't make it to Court,' * * *, he made several comments to me about if anybody is a confidential informant, they wouldn't make it to Court, and lots of things will happen to us." Transcript, pgs. 126-127. Furthermore, appellant admits in a brief filed on Jan. 17, 2001, that through "diligent research and investigation", appellant learned the identities of the confidential informants and that is why he attempted to subpoena the informants at the suppression hearing. This court fails to see how appellant was prejudiced as he actually admitted his knowledge of the informant's identities on the record prior to his March 2001 trial.
 {¶ 15} Appellant also attempts to direct this court to State v.Daniels (1993), 92 Ohio App.3d 473, for the proposition that an ex parte hearing should have been held in order for the state to properly certify its confidential informants under Crim.R. 16(B). Appellant is incorrect in his assertion. The court in Daniels held that where relief from discovery is sought, the procedure must be ex parte. Id. In the case before us, appellee never sought relief from discovery; as a result, no ex parte hearing was required. We also note that the record indicates appellee certified its confidential informants in an entry dated Oct. 27, 2000.
 {¶ 16} Based on the foregoing facts, appellant has failed to show that the trial court's refusal to reveal the identities of the confidential informants was arbitrary or unreasonable. The testimony of Schultz and Gibbs led directly to appellant's arrest and prosecution. We cannot see where that would be helpful or beneficial to appellant in constructing a defense for trial. Appellant admits he learned the identity of the informants prior to trial, and the informants testified that they were physically threatened by appellant's father prior to trial. Furthermore, there is no evidence showing that the informants took part in any criminal activity relating to appellant. As a result, the holdings of Williams, Roe, Beck, Elersic, and Bays dictate that we find appellant's first assignment of error not well taken and without merit.
 {¶ 17} In his second assignment of error, appellant claims that the trial court erred in denying appellant the opportunity to present the testimony of the confidential informants at the pretrial suppression hearing. Again, we disagree with appellant.
 {¶ 18} On Dec. 18, 2000, a hearing was held on appellant's motion to suppress. In filing the motion, appellant was attempting to suppress "any and all evidence resulting from the execution of a search warrant * * *." Before proceeding with our analysis, it is essential to note that appellant has failed to incorporate the transcript of the suppression hearing into the record before us for review.
 {¶ 19} Appellant in this case was attempting to call witnesses he believed to be confidential informants. As mentioned in our earlier discussion, the trial court properly found that the identities of the informants were to be kept confidential. The record indicates that appellant was attempting to call Schultz and Gibbs at the suppression hearing, in the hopes they might reveal discrediting information about the search warrant issued in this case. In allowing appellant the chance to brief the issue before deciding if Schultz and Gibbs were required to testify at the suppression hearing, the trial court gave appellant every opportunity to prove its argument. Furthermore, the search warrant and accompanying affidavit show that Detective McNabb corroborated the informants' testimony with police reports filed in Geauga County. Upon cross-referencing the reports with the information provided by the informants, Detective McNabb determined "that the information provided by Gibbs was consistent and accurate with the information found in the reports." Based on that information, the search warrant in this case was found to be valid. See, Illinois v. Gates (1983), 462 U.S. 213. In its judgment entry, the trial court found that: "Lawson essentially claims that the search warrant was based on false or unreliable statements by the informants. Lawson has provided no evidence to support this claim." Indeed, the trial court properly recognized that appellant failed to provide any evidence countering the state's corroboration of the informants' information in this case.
 {¶ 20} As previously mentioned, appellant has failed to provide this court with a transcript of the hearing. Appellant has also failed to demonstrate that statements made by the informants were false and unreliable. In fact, the trial court found that: "The evidence shows that two confidential informants accurately provided details of two crimes that were not public knowledge thus making their information credible and reliable." Absent a transcript of the hearing, there is nothing else on the record that supports appellant's claims that Gibbs and Schultz provided false and unreliable information to the police.
 {¶ 21} We note that appellant was seeking disclosure in the context of a pretrial motion to suppress as opposed to a motion made at trial. The right to confrontation, which includes the right to physically face and cross-examine witnesses, is not a constitutionally compelled rule of pretrial discovery. Pennsylvania v. Ritchie (1987), 480 U.S. 39,54; State v. Perroni (June 26, 1998), 11th Dist. No. 96-L-107, 1998 Ohio App. LEXIS 2932. The confrontation clause "is not a pretrial discovery device." State v. Wickline (1990), 50 Ohio St.3d 114, citing Ritchie, supra, at 52.
 {¶ 22} Having held that the trial court properly kept the identities of the informants confidential, we also hold that the trial court properly denied appellant's request to subpoena the informants at the pretrial suppression hearing. Based on the foregoing analysis, we hold that appellant's second assignment of error is not well taken and without merit.
 {¶ 23} Appellant's third and final assignment of error suggests that the trial court erred in denying appellant's Crim.R. 29 motion as it applied to count one of the indictment.[1]
 {¶ 24} A motion made under Crim.R. 29 challenges the sufficiency of the evidence introduced by the state. State v. Mauri (June 26, 1998), 11th Dist. No. 97-A-0045, 1998 Ohio App. LEXIS 2924. The standard for evaluating a sufficiency of the evidence claim is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 25} In his brief, appellant's counsel claims, "that the author has failed to find any testimony or exhibit that identifies any item seized and submitted as evidence of a truck belonging to Louis Soltesz or any part of that truck." Appellant's Brief, pg. 7. However, an examination of the record before us would seem to prove otherwise.
 {¶ 26} Appellant was convicted of two counts of receiving stolen property in violation of R.C. 2913.51(A). The statute states, "no person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense." Id.
 {¶ 27} The record indicates that the Lawson family owned a 1987 Ford F-150 pickup truck that became inoperable due to a blown transmission. Subsequently, the record indicates that, in an effort to find a replacement vehicle for their F-150, the Lawson family stole and modified a 1996 Ford F-250, belonging to Louis Soltesz in December of 1999. At trial, Zachary Gibbs testified the following events occurred at the Lawsons' storage bay owned by his grandfather:
 {¶ 28} "Q. Now, at some point, Zach, did you become aware of the work that was being done on the F-150?
 {¶ 29} "A. Yes."
 {¶ 30} "Q. I believe you indicated earlier you were present when work was being done on that truck?
 {¶ 31} "A. Yes.
 {¶ 32} "Q. What did you see take place at that time?
 {¶ 33} "A. I watched them take the front clip, which is fenders, hood, and rear panel off the '87 Ford Truck, take the front clip, fender hood, rear panel off the '96 and interchange them, so the '96 would have the '87 front clip on it.
 {¶ 34} "Q. Do you know where they got the 1996 truck?
 {¶ 35} "A. They said they stole it, that's all I know." Transcript, pgs. 83-84.
 {¶ 36} "Q. You say — you use the term "they were working on the truck," can you again for the record tell us who you saw working on the truck?
 {¶ 37} "A. David, Dusty, and Davey Lawson." Transcript, pg. 86.
 {¶ 38} The record also indicates that the police were informed by one of the confidential informants that the remodeled, stolen vehicle was subsequently parked across the street from the Lawsons' residence. On the day it was seized, that was the exact location where police found the stolen F-250 parked. Transcript, pg. 56. Upon seizure of the vehicle, the police identified the vehicle seized in the parking lot as the stolen Ford F-250 belonging to Louis Soltesz, and that indeed the "front clip" had been replaced with that of a 1987 Ford F-150. Transcript, pg. 141-148. Furthermore, the license plates found attached to the stolen vehicle were identified as belonging to the 1987 F-150 registered to Bonnie Lawson, appellant's mother.
 {¶ 39} Viewing the above evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found that Dusty Lawson knowingly received and retained a stolen vehicle in violation of R.C. 2913.51(A). As a result, we find appellant's third assignment of error not well taken and without merit.
 {¶ 40} Based on the foregoing, appellant's first, second, and third assignments of error are without merit and the judgment of the Lake County Common Pleas Court is hereby affirmed.
WILLIAM M. O'NEILL, P.J., DONALD R.FORD, J., concur.
[1] Briefly, we note that the record indicates appellant is appealing the trial court's decision pertaining to the truck belonging to Louis Soltesz, contained in count one of the indictment, not count two, as originally indicated on page 7 of appellant's brief.