JOURNAL ENTRY AND OPINION
Defendant Love appeals from her conviction for possession of drugs in violation of R.C. § 2925.11. For the reasons set forth below, we affirm.
Defendant Love was indicted on the above charges as well as for trafficking in cocaine (R.C. 2925.03), preparation for sale (R.C. 2925.07) and possessing criminal tools (R.C. 2923.24). Prior to trial, Defendant filed a motion to suppress and for the return of illegally seized property, alleging a lack of probable cause in the issuance of the search warrants obtained by the Cleveland Police Department.
At the suppression hearing, Detective Andre Haynesworth of the Cleveland Police Department testified that on July 9, 1999 he executed a search warrant at 1586 E. 84th Street, Cleveland, Cuyahoga County, Ohio. According to Detective Haynesworth, the SWAT team gained initial entry by knocking and announcing their presence. Receiving no answer, the SWAT team entered the premises. Inside the home, the law enforcement officers found Thomas Richard, the defendant's fiancee and co-defendant, upstairs. They secured the premises and proceeded to thoroughly search the premises for any evidence of illegal drug activity.
At the hearing, the defense introduced photographs to support the proposition that the police unreasonably executed the search warrant by causing excessive damage to the premises. Additionally, the defense presented testimony of co-defendant Thomas Richard, who stated that he did not hear the police knock and announce before entering the premises.
Following the hearing on the motion, the court denied the motion to suppress the evidence and for the return of illegally seized property. The matter proceeded to a jury trial.
At trial, the state presented testimony of Detective Tommie Hall of the narcotics unit of the Cleveland Police Department. He stated that as a result of anonymous citizen complaints concerning drug trafficking at the residence, the house had been under surveillance on more than one occasion for over one month. According to Detective Hall, a moderate volume of pedestrian and vehicular traffic was seen at the residence while under surveillance. Detective Hall stated in his affidavit that he witnessed individuals approach the house and a female named "Dejia" would come out to the front porch, re-enter the house for a short period of time, and then return to the front porch. The female would then conduct a hand-to-hand transaction with customers from the front porch of the aforementioned premises. The detective stated that, in his experience, such activity is indicative of drug trafficking.
Subsequently, a confidential reliable informant (CRI) working with the Cleveland Police Department made a controlled drug purchase from the home on July 8, 1999. Detective Hall testified that the informant was picked up at a predetermined location, was searched and found to be free of money, drugs and/or other contraband. The CRI was given a sum of photocopied US currency, was taken to 1586 E. 84th Street and walked up to the front of the premises. The CRI was met by the defendant at the premises. The detective further testified that the defendant went into the house for a short time, came back out made an exchange with the CRI and then returned to the house. Hall testified that he never lost sight of the CRI during the whole transaction. The detective testified that the CRI brought back a rock of what was later determined to be crack cocaine. Hall testified that he then searched the CRI and found the CRI to be free from other contraband and/or money. The identity of the CRI was not disclosed at any point. The detective testified that he conducted additional surveillance after the controlled buy.
Thereafter, the Cleveland Police Department obtained a search warrant for the premises and executed it on July 9, 1999. At trial, Detective Hall testified that after a thorough search the SWAT team discovered 32 rocks of what was suspected, and what was later confirmed to be, crack cocaine. Additionally, they found next to the rocks of crack cocaine roughly $12,000 in cash, a Planter's peanuts can with crack cocaine residue on it and baggies in it, and six safety deposit box keys. Detective Hall testified that in his experience, people who traffic in cocaine prepare their quantities in plastic bags. The police department also found on the premises a scale commonly used to weigh drugs.
Thereafter, the Cleveland Police Department obtained a search warrant for the safety deposit boxes for which they had found keys. After a search, the police discovered $124,289 cash in the safety deposit box at the Huntington National Bank. Additionally, they found $49,000 cash in the safety deposit box at Firstar Bank.
The defense presented testimony of a neighbor who stated that during the period of time when the defendant moved into her new home, she did not see any drug activity at the defendant's house.
The defendant testified extensively with regard to her whereabouts on July 8, 1999, the day of the controlled buy with the CRI and the defendant. Her testimony indicated that she was busy that day coming and going from the house with her fiancee and co-defendant, picking up furniture and home improvement supplies. She denied participating in the controlled buy. The defendant also testified that law enforcement officers had caused excessive damage to the premises while executing the search warrant.
Defendant was found guilty by the court of possession of crack cocaine. She presently appeals, raising six assignments of error.
 I. THE TRIAL COURT ERRED IN FINDING THAT THE SEARCH WARRANTS WAS [SIC] WITH SUFFICIENT PROBABLE CAUSE.
In her first assignment of error, defendant asserts that the trial court erred in denying her motion to suppress the evidence on the basis that the affidavit in support of the search warrant was insufficient to establish probable cause. The defendant asserts that the affidavit in support of the search warrant for 1586 E. 84th Street and the safe deposit boxes in defendant's name at FirstStar Bank were not supported by probable cause. Defendant submits that, as a result, the search of the home and the safe deposit boxes were unreasonable and any items seized during the search were inadmissible and should have been suppressed.
The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the reviewing court is to determine whether the issuing judge had a substantial basis to conclude that probable cause existed. State v. George (1989), 45 Ohio St.3d 325, paragraph two of the syllabus, following Illinois v. Gates (1983),462 U.S. 213, 238-239. Neither a trial court nor an appellate court should substitute its judgment for that of the issuing magistrate by conducting a de novo review. Id. In making the determination of whether there was a substantial basis to conclude that probable cause existed, the reviewing court must:
 Make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Id. at paragraph one of the syllabus. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts should afford great deference to the issuing magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.Id.
In the case sub judice, the affidavit in support of a search warrant for 1586 E. 84th Street stated the following facts, in part:
 1. During the past month, anonymous citizen complaints were received concerning drug trafficking at the above premises.
 2. * * * during surveillance conducted since June 4, 1999, affiant has observed moderate pedestrian and vehicular traffic going in and out of the premises. Individuals would drive up and wait at the location and a black female known as "Dejia" would exit the aforementioned premises and would return to the front porch area * * *. "Dejia" would conduct a hand to hand transaction with customers from the front porch * * * This activity occurs mostly in the afternoon. In the experience and training of affiant, such activity is indicative of drug trafficking. The customers would immediately leave the vicinity either by vehicle or by foot.
 3. Within the past seventy-two hours, affiant contacted a Confidential Reliable Informant (CRI), who is known by the Cleveland Police Department. * * * CRI was taken to the vicinity of the above-described premises. Affiant accompanied CRI to the aforementioned premises in an undercover vehicle. CRI was searched, and found to be free of money, drugs, and/or other contraband. CRI was then given a sum of United States currency from which the serial numbers had been recorded. Affiant observed CRI approach the aforementioned premises. Affiant observed the subject known as "Dejia" sitting on the front porch of the aforementioned premises. CRI spoke with "Dejia" and handed U.S. currency to subject known as "Dejia" for purported crack/cocaine. "Dejia is described as a black female, approximately five feet, seven inches, late twenties, 125 lbs. with a light brown complexion and red hair. Affiant observed subject "Dejia" enter the aforementioned premises and return to the front porch. CRI remained on the front porch. Affiant observed "Dejia' [sic] pass an item to CRI's hand. CRI immediately returned to the undercover vehicle. CRI handed affiant the purported crack/cocaine * * *.
Based on the foregoing, we find that the issuing magistrate was justified in issuing a search warrant. Citizen complaints, law enforcement surveillance and a controlled buy set-up at the home searched would indicate to an issuing magistrate that there was a fair probability that drugs would be found on the premises. It should also be noted that information contained in the affidavits was not stale; surveillance and the controlled buy took place just prior to the issuance of the search warrant.
The defendant argues that because the affidavit submitted in support of probable cause is purportedly in conflict with testimony offered at trial, the affidavit is therefore less credible and as a result this court should regard the affidavit with extreme caution. In her assignment of error, the defendant does not attack the veracity of the affiant by stating that the affiant made statements with reckless disregard for the truth. Instead, the defendant alleges that the issuing magistrate was not justified in determining that probable cause existed based on the information provided by the affiant. As noted above, the duty of this court in this situation is to determine whether the issuing magistrate had a substantial basis to believe that probable cause existed at the time of issuing the search warrant. Therefore, any testimony in a subsequent proceeding would assuredly have no bearing upon the impact the affidavit would have on the issuing magistrate and his or her determination of the existence of probable cause at the moment the search warrant was issued.
We find that the issuing magistrate had a substantial basis to believe there was a fair probability that drugs would be found at the home.
The affidavit in support of a search warrant for the safe deposit boxes stated the following facts, in part:
 1. On July 9, 1999, affiant and members of CPD had occasion to arrest a male * * * in connection with trafficking in cocaine. At the time of the arrest, numerous safety deposit keys were located in the couples upstairs bedroom. Keys list to a safety boxes. [sic]. Found in the premises were 32 rocks of suspected crack cocaine, a scale commonly used to weigh controlled substances and $12,000 cash.
 2. In the course of the investigation, affiant has learned that * * * and Dacia K. Love reside together and are jointly involved in the ongoing sale and distribution of crack cocaine. Ms. Love was not at the premises at the time of the execution of the warrant but was at the premises and actively involved in the sale of crack cocaine that led to the issuance of the search warrant.
 3. * * * The safety deposit agreement is in the name of Dacia K. Love.
 4. In the experience of affiant, persons who traffic in illegal drugs frequently keep records of illegal transactions, and evidence of communications used in the furtherance of drug trafficking activity as well as drugs and cash in places away from the place where the drugs are sold.
Again, based on the facts presented, we find that the issuing magistrate had a substantial basis to believe there was a fair probability that the safety deposit box would contain contraband and/or evidence of illegal drug trafficking.
Having determined that the issuing magistrate properly ascertained that probable cause existed for both the house and the safe deposit boxes, we overrule this assignment of error.
Assignment of error I is overruled.
 II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE DUE TO THE UNLAWFUL ENTRY AND THE UNLAWFUL EXECUTION OF THE SEARCH WARRANT.
Within this assignment of error, defendant alleges that the law enforcement officers failed to knock and announce before entering her home, that they caused excessive damage to her home and therefore the search was unreasonable and all evidence seized should be suppressed.
We first address law enforcement's alleged failure to knock and announce prior to entering the defendant's home. As to the requirement that the police knock and announce themselves before entering, R.C. 2935.12
provides in part, as follows:
 (A) When making an arrest or executing an arrest warrant or summons in lieu of an arrest warrant, or when executing a search warrant, the peace officer, law enforcement officer, or other authorized individual making the arrest or executing the arrest or summons may break down an outer or inner door or window of a dwelling house or other building, if after notice of his intention to make the arrest or to execute the warrant or summons, he is refused admittance * * * [Emphasis added.]
If the provisions of this statute are not followed, the search may be constitutionally unreasonable and the results of the search may be suppressed. State v. Valentine (1991), 74 Ohio App.3d 110, 113. However, where the police knock and announce themselves but are not admitted, they may forcefully enter. State v. Litvin, 1999 Ohio App. LEXIS 3694 (Aug. 12, 1999), Cuyahoga App No. 74563 74564, unreported, citing State v.Amundson (1996), 108 Ohio App.3d 438, 440. State v. Morgan (1988),55 Ohio App.3d 182, 185.
This court set forth the standard of review of a trial court's judgment with regard to a motion to suppress in State v. Curry (1994),95 Ohio App.3d 93, 641 N.E.2d 1172. It states:
 In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906.
In this instance, the state presented evidence that the police did knock and announce their presence and that they had a search warrant. Detective Andre Haynesworth testified that he was present when the search warrant was executed at the defendant's home, that the Cleveland Police SWAT team initially gained entry into the home and described the SWAT team's entry procedure. Additionally, he testified that he heard the police knock and announce their presence before entering:
 Q. Were you present when the SWAT team entered the home on this particular date?
A. Yes.
 Q. And do you know whether or not the SWAT team made any announcements or attempted to gain access to the home prior to forcing entry?
 A. Yes. Normally when they come in the first thing they do is they will hit the door once or twice, and then after they announce police, they will proceed to use a ram or what we call a hooligan tool to enter the door based on the type of entry they need to do.
 Q. So did the SWAT team hit the door, knock on the door prior to forcing entry?
 A. Yes, it was enough people outside around to see that. [sic].
Q. And did they announce that they were the police?
A. Yes.
Q. Was there a response from the home?
A. There was no response from inside at the time.
(T. 60, 61) The police forcibly opened the door after there was no response. The defense insisted, however, that the police did not knock and announce prior to entering and offered testimony of Thomas Richard, a co-defendant who was upstairs in the bathroom when the police entered.
In the case sub judice, the court found the state's testimony to be more credible than the defense's testimony and determined that law enforcement officers did knock and announce their presence before entering defendant's home. Based on the evidence presented, we conclude that the trial court's determination is supported by credible evidence. Accordingly, with regard to the law enforcement's alleged failure to knock and announce their presence before entering the home, this error is not well taken.
We next address the issue of whether law enforcement officers executed the search warrant in such a manner as to render the search unreasonable and thus subject to suppression of the evidence. The defendant alleges that the premises were unnecessarily and unjustifiably damaged during the execution of the search warrant and that the trial court was reluctant to evaluate evidence in this regard. However, the record indicates that the trial court overruled the state's objection to the admission of photographs proffered in support of excessive damage. While the trial court did not allow in every photograph as evidence, it did evaluate several of the photographs as evidence proffered by the defendant. The trial court determined, after hearing testimony and allowing photographs into evidence, that the damage caused to the premises was not so excessive as to render the search unreasonable. The photographs indicate that law enforcement officers did cause some damage to the premises. However, the damage caused was not excessive. It is well known that drugs are small and easy to conceal and that it is sometimes necessary for police to search in areas which are difficult to access. As a result, some damage to walls and other areas may occur during the execution of search warrants, as is the case here. Assuming arguendo that the photographs accurately depict the premises after the police conducted the search, they do not support the conclusion that law enforcement officers conducted the search in such a manner as to render it unreasonable.
Based on the evidence presented, we conclude that the trial court's determination is supported by competent credible evidence. Therefore, this assignment of error is overruled.
 III. THE TRIAL COURT ERRED WHEN IT FAILED TO ORDER THE STATE OF OHIO TO REVEAL THE IDENTITY OF THE CONFIDENTIAL INFORMANT.
In her third assignment of error, the defendant alleges that the trial court erred in refusing to order the state to reveal the identity of their informant.
In Roviaro v. United States (1957), 353 U.S. 53, the Supreme Court refused to adopt a fixed rule regarding disclosure and instead noted:
 The question calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
Id. at 62. Moreover, the defendant bears the burden of establishing the need for disclosure. State v. Brown (1992), 64 Ohio St.3d 649, 653. That is:
 The identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges.
State v. Williams (1983), 4 Ohio St.3d 74, syllabus; State v. Parsons
(1989), 64 Ohio App.3d 63, 69. Generally, when the degree of participation of the informant is such that the informant virtually becomes a state's witness, the balance swings in favor of requiring disclosure of the informant's identity. Williams, supra. Conversely, where disclosure would not be helpful or beneficial to the accused, the identity of the informant need not be revealed. Id. at 76.
Finally, a trial court's decision concerning the disclosure of the identity of a confidential informant will not be reversed absent an abuse of discretion. State v. Feltner (1993), 87 Ohio App.3d 279, 282. The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983) 5 Ohio St.3d 217, 219.
In the case sub judice, the testimony of the informant is not vital to establishing an element of the crime. The informant participated in a controlled buy, which gave the police probable cause to believe that drugs and/or other contraband would be found on the premises. As a result of the controlled buy, previous surveillance of the home and citizen complaints, law enforcement officers obtained a search warrant, found crack cocaine on the premises, and charged defendant possession of drugs in violation of R.C. 2925.11.
If the defendant had been convicted of selling crack cocaine to the CRI on the date of the controlled buy, the CRI's testimony would be vital to establishing an element of the crime. However, this is not the case. Any testimony of informant would not establish an element of possession, of which defendant was convicted.
Similarly, testimony of informant would not be helpful or beneficial to the defendant in preparing or making a defense to criminal charges. Again, the defendant was convicted of possession of crack cocaine. There is no testimony on the part of the informant that could exculpate the defendant on this charge. The CRI could only testify to his participation in the controlled buy which occurred on a different day. It is of critical significance in this case that the informant could not provide any exculpatory evidence with regard to other bases for probable cause, namely the previous surveillance conducted on the home and the citizen complaints.
Accordingly, we are unable to conclude that the trial court abused its discretion in denying the defendant's motion to disclose the identity of the confidential reliable informant.
 IV. THE APPELLANT'S CONVICTION FOR POSSESSION OF DRUGS IN VIOLATION OF R.C. OF OHIO § 2925.11 WAS BASED UPON INSUFFICIENT EVIDENCE, AND CERTAINLY DID NOT MEET THE THRESHOLD STANDARD ON PROOF BEYOND A REASONABLE DOUBT.
In her fourth assignment of error, the defendant challenges the sufficiency of the evidence.
When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Statev. Jenks (1991), 61 Ohio St.3d 259 at paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh
(2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749.
Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
"Possession" is defined in R.C. 2925.01(K) as follows:
 "Possess" or "possession" means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.
Possession may be actual or constructive. State v. Haynes (1971),25 Ohio St.2d 264; State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus. Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. State v. Wolery (1976),46 Ohio St.2d 316, 329. Constructive possession will be established where the accused was able to exercise dominion or control over the contraband. Id.
Applying the foregoing, we note that the state's evidence demonstrated that 32 rocks of crack cocaine were found in the defendant's bedroom night stand. Construing the evidence in a light most favorable to the prosecution as directed by State v. Jenks, supra, we conclude that a rational trier of fact could have found that, although defendant did not exercise actual control over the crack cocaine, she was nonetheless able
to exercise dominion or control over it. Accordingly, we are unable to conclude that defendant's conviction for possession of the cocaine found in her bedroom was supported by insufficient evidence.
 V. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE OF OHIO TO REFERENCE THE SEIZURE OF MONIES TAKEN BY THE POLICE.
In her fifth assignment of error, defendant asserts that the trial court erred in allowing the prosecution to reference the seizure of monies by the police. The defendant asserts that the trial court, in allowing the prosecution to make such a reference, violates Evid.R. 401, 402 403. This argument is without merit.
In her reply brief, the defendant alleges that the state referenced monies seized during her closing argument, citing the transcript of the closing argument at Volume III, pp. 576-77.
It is well-settled that remarks made by counsel during opening statements and closing arguments are not evidence. State v. Stearns, 2000 Ohio App. LEXIS 3161 (July 13, 2000), Cuyahoga App. No. 76513, unreported. As such, Evid.R. 401, 402 nor 403 would apply to any statements made by the state in her closing argument.[1]
The trial court did not violate Evid.R. 401, 402 or 403 in allowing the state to make her closing argument. This assignment is overruled.
 VI. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO REQUIRE THE STATE OF OHIO TO REVEAL THE PRECISE TIME OF THE ALLEGED DRUG SALE.
In her sixth assignment of error, the defendant asserts that the trial court abused its discretion in failing to require the state to reveal the precise time of the alleged drug sale. This assignment of error is without merit.
The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore, supra. However, under this assigned error defendant fails to reference any portion of the record that would indicate that the trial court took any action or otherwise exercised any discretion in this regard. The defendant did not make a motion or voice an objection that the court denied. The defendant simply states that the testimony offered at trial during Detective Hall's cross-examination and re-direct contained inconsistencies.[2] It is well settled that on the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. DeHass, supra. The jury determined that Detective Hall's testimony was credible.
Lastly, it should be noted that the defendant cites no legal authorities in this assignment of error as required by App.R. 16 (A)(7). While she alleges an abuse of discretion, she points to no action by the court which would be deemed arbitrary or unreasonable, rather she points to testimony submitted which was ultimately decided by the jury. As such, the defendant's sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, J., CONCURS. TIMOTHY E. McMONAGLE, P.J., CONCURS WITH ATTACHED CONCURRING OPINION.
[1] At best, the defendant alludes to an error based on prosecutorial misconduct by alleging that the state's remarks were improper. However, the defendant did not object to statements made by the state during her closing argument. As such, the defendant has waived her rights to raise this on appeal. Villella v. Waikem Motors, Inc. (1989) 45 Ohio St.3d 36,40. The Supreme Court of Ohio has long recognized that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal. Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, citing: Gallagher v. Cleveland BrownsFootball Co. (1996), 74 Ohio St.3d 427, 436-437; Buchman v. Wayne TraceLocal School Dist. Bd. of Edn. (1995), 73 Ohio St.3d 260, 271.
[2] A careful reading of Detective Hall's testimony does not necessarily reveal an inconsistency with regard to the time of the alleged sale. On cross-examination, Detective Hall testified that the sale took place somewhere between 12:00 and 4:00. (T. 92) On re-direct, the state asked Detective Hall:
 Q. Were you being sloppy or lazy or deceitful in your paperwork when you told Mr. Willis that you didn't write down the exact time, or you didn't write down the criminal record of the informant, et cetera, et cetera?
A. No, I wasn't being sloppy or deceitful.
Q. What's that about?
 A. It's about protecting the identity of somebody who may be harmed if their identity is found out.
(T. 157) The answer given by Detective Hall does not state that the reason for not giving a more precise time was to protect the identity of the informant. The state's question and Detective Hall's answer also addressed the reason for not divulging the criminal record of the informant. In fact, upon re-cross of Detective Hall, the apparent conflicting testimony was clarified when defendant's counsel asked the detective:
 Q. Well, what you just told the prosecutor here is that you were vague about the time because you want to protect the identity of the informant. That's what you just told us, is that right?
A. That's not right.
Q. That's not right?
A. No.
 Q. So you don't have a specific recollection of a specific time of the sale, that's what you're telling us?
A. That's correct. (T.162-163)