JOURNAL ENTRY AND OPINION
{¶ 1} The State of Ohio appeals the decision of the common pleas court, which granted appellees' motion to suppress evidence. After a thorough review of the arguments presented and for the reasons set forth below, we affirm.
 {¶ 2} On May 3, 2004, Jessica Beltran and Juan Diaz ("appellees"), were indicted on drug related charges, including one count of possession of drugs, in violation of R.C. 2925.11, and one count of possession of criminal tools, in violation of R.C. 2923.24. These charges arose from evidence seized pursuant to an investigation, the circumstances of which are as follows.
 {¶ 3} Detective Brian Heffernan ("Heffernan") of the Cleveland Police Department was investigating the disappearance of Amanda Berry ("Berry"), a young girl who lived on the west side of Cleveland. In February 2004, Heffernan received information from a cooperative individual ("informant") regarding the Berry case. Heffernan learned that the informant had purchased heroin from Anthony Olivera (a.k.a. and hereafter "Tone") near the corner of West 110th Street and Lorain Avenue. The informant reported on a conversation he had with Tone that suggested Tone had knowledge concerning Berry's whereabouts.
 {¶ 4} Heffernan set up surveillance at the West 110th and Lorain location. Shortly after his surveillance began, Heffernan observed Tone in a drug transaction and arrested him. In speaking with Heffernan, Tone admitted to using heroin; he did not admit or deny knowing the whereabouts of Berry, but he denied any involvement with drugs other than for his own personal use. When asked where he had recently come from, Tone gave the names and address of the appellees, later discovered to be relatives of Tone.
 {¶ 5} Heffernan proceeded to the Bernard Apartments on West 110th and knocked at apartment 6, appellees' reported apartment. No one answered; however, a neighbor opened his door and informed Heffernan that Tone was there often. In an effort to verify that appellees lived at apartment 6, Heffernan searched the unlocked mailbox of apartment 6, without a search warrant. In the mailbox, Heffernan found plastic bags of suspected heroin. He left to obtain a search warrant for the apartment, which was granted, authorizing the search for evidence concerning the whereabouts of Berry and any drugs or drug related materials. The warrant was executed, and the police seized heroin, ammunition for a 9 mm gun, and a large amount of U.S. currency. No information was found relating to Berry. Appellees were subsequently arrested.
 {¶ 6} Prior to trial, appellees filed a motion to suppress evidence. The trial court held a hearing on the motion on December 30, 2004, and on April 28, 2005 the motion to suppress was granted. The state now appeals that ruling. On July 15, 2005, following the state's notice of appeal, the trial court filed Findings of Fact and Conclusions of Law. The state asserts a single assignment of error in its appeal:
 {¶ 7} "THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS EVIDENCE."
 {¶ 8} Our standard of review with respect to a motion to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 688 N.E.2d 9, citing Talmage v. McCoy (1994),96 Ohio App.3d 604, 645 N.E.2d 802. This is the appropriate standard because "in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996),112 Ohio App.3d 521, 679 N.E.2d 321. However, once we accept those facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.
 {¶ 9} The trial court filed Findings of Fact and Conclusions of Law in support of its ruling to suppress the evidence, citing several reasons for its decision. The trial court found that the informant was not a confidential reliable informant ("CRI"), as referred to in the affidavit supporting the warrant in question. Thus, the finding of probable cause was based upon false or misleading information. Furthermore, the trial court found that the vague information given by Tone, the informant and the appellees' neighbor, taken alone was insufficient to create probable cause for a warrant if the search of the mailbox was found to be invalid. Finally the trial court found that, under these circumstances, Heffernan's search of appellees' mailbox was unjustified and violated their expectation of privacy. We hold these findings to be supported by competent, credible evidence.
 {¶ 10} The right to be free from unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution, which provides that no warrant shall issue but upon probable cause. When the sufficiency of an affidavit submitted in support of a search warrant is in question, the duty of the reviewing court is to determine whether the issuing judge had a substantial basis to conclude that probable cause existed.State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640 ¶ 2, of the syllabus, following Illinois v. Gates (1983),462 U.S. 213, 2382-39, 76 L.Ed. 2d 527, 103 S.Ct. 2317. The appellate court is not charged with a de novo review of the sufficiency of information set forth to obtain the warrant. In making the determination of whether there was a substantial basis to conclude that probable cause existed, the reviewing court must "make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at paragraph 1 of the syllabus.
 {¶ 11} When reviewing the circumstances in their totality, several issues arose that led us to question the validity of the search and seizure in this case. The connection between the information given and the conclusion that Berry and/or contraband could be found at appellees' apartment was tenuous at best. The United States Supreme Court has long held that "the security of one's privacy against arbitrary intrusion by the police" is "at the core of the Fourth Amendment." Berger v. New York (1967),388 U.S. 41, 53. The affidavit presented to obtain the search warrant contained vague inferences and misleading information. Furthermore, Heffernan's intrusion into appellees' mailbox was unjustified in this case.
 {¶ 12} In his affidavit, Heffernan cites the following pertinent facts in attempting to link appellees' apartment to the disappearance of Berry and contraband:
 {¶ 13} "Since April 2003 affiant [Heffernan] has been working on the disappearance of AMANDA BERRY.
 {¶ 14} "On February 25, 2004 an individual who came forth with information concerning BERRY contacted affiant.
 {¶ 15} "This person * * * indicated that he/she buys heroin in the area of W.110 and Lorain. The buys are made from a male this person knows as `TONE'. * * *
 {¶ 16} "Cooperating person indicated that at the time a recent buy was being made from `TONE' they were standing at a store near a posted flyer giving information about the disappearance of AMANDA BERRY. Cooperating person stated to affiant that `TONE' pointed to the picture of BERRY and stated words to the effect of, `I can't believe they ain't found that bitch yet. She's with my boy messed up on the shit. * * *'
 {¶ 17} "Cooperating individual hereinafter referred to asCRI reported to affiant that he/she questioned `TONE' further about BERRY. In this conversation `TONE' alluded to BERRY being a heroin addict and living with his boy up the block * * * [Emphasis added.]
 {¶ 18} "* * * CRI stated `TONE' always walks to the corner of W. 110 and Lorain and does his deals * * *
 {¶ 19} "After receiving this information affiant set surveillance in the area. Within ten minutes affiant observed an individual matching the description of `TONE' * * * Here affiant observed a hand-to-hand exchange where `TONE' after nervously looking around handed the female an object and received something in return.
 {¶ 20} "* * *
 {¶ 21} "In the experience and training of affiant this activity is indicative of drug sales.
 {¶ 22} "Affiant radioed for assistance and followed `TONE' into the store.
 {¶ 23} "* * *
 {¶ 24} "With the above information concerning BERRY in mind I [Heffernan] asked, `TONE' where he came from. `TONE' indicated that he was over at his aunt Jessica's at the Bernard Apartments on W. 110. `TONE' whose real name was found to be ANTHONY OLIVERA was questioned about not only his involvement in drugs but about the whereabouts of BERRY. He denied any involvement with drugs other than to be a two bag a day user and claimed to know nothing about BERRY. He also denied ever having made the statements.
 {¶ 25} "Affiant and members of the First District went to the above-described address. We knocked on the door several times and did not receive a response.
 {¶ 26} "A neighbor answered the door to apartment 7 after hearing us knock on the door of apartment 6 several times. He indicated OLIVERA as a person he sees around often.
 {¶ 27} "While checking the mailbox that was unlocked for apartment 6 for information to establish the identity of the resident of apartment 6 affiant found a plastic bag containing several yellow plastic bags of suspected heroin.
 {¶ 28} "Affiant assigned detectives to watch the perimeter of the building so that no one could come or go from apartment 6 prior to this warrant being executed." (Tr., State's Exhibit 1.)
 {¶ 29} Heffernan did not personally observe nor did he receive any eye witness reports of evidence that placed either Berry or contraband at the appellees' apartment. Heffernan's focus on the apartment in his investigation rested upon the informant's statement that he bought drugs from someone who allegedly told him that Berry was "with his boy." Informant admitted that he did not know the identity of Tone's "boy" or where he lived. When asked by Heffernan, Tone stated that he did not have any information about Berry's whereabouts or drugs other than for his own personal use. The only information connecting to the appellees' apartment was Tone's statement that he had just come from that apartment prior to his arrest and a neighbor's statement that Tone was there often. This information alone is insufficient to establish probable cause to search appellees' apartment and intrude on their right of privacy.
 {¶ 30} Heffernan attempts to bolster his probable cause case by citing to the plastic bags of suspected heroin found in appellees' mailbox; however, the trial court found it unreasonable to conduct a warrantless search of appellees' mailbox in this situation. The concept of reasonableness is the core of the Fourth Amendment's provision concerning search and seizure. Reasonableness is measured in objective terms by examining the totality of the circumstances. Ohio v. Robinette
(1996), 519 U.S. 33, 117 S.Ct. 417. Viewing the totality of the circumstances here, we agree with the trial court's assessment that Heffernan's search of the mailbox was unreasonable.
 {¶ 31} The "capacity to claim the protection of theFourth Amendment depends * * * upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas v. Illinois (1978),439 U.S. 128, at 143; citing Katz v. United States (1967),389 U.S. 347, at 353; see United States v. Chadwick (1977), 433 U.S. 1,7; United States v. White (1971), 401 U.S. 745, 752. A legitimate "expectation of privacy by definition means more than a subjective expectation of not being discovered. * * * Legitimation of expectations of privacy by law must have a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." Rakas, supra at 143.
 {¶ 32} Here, appellees' lawful possessory interest in the apartment in question is not in dispute. Since appellees had a recognized right to exclude others from the apartment, it reasons that they also retained that same right to the apartment's mailbox in their rightful possession. Fourth Amendment rights are personal. State v. Macklin (1990), Cuyahoga App. No. 57747; citing Rakas, supra. This court, in Macklin, supra, ruled against a defendant-appellant's attempt to suppress evidence confiscated pursuant to a warrantless search of a mailbox. However, in so ruling, this court stated:
 {¶ 33} "In the instant case, the suspected crack cocaine was found in the mailbox attached to an abandoned house. We find that appellant had no expectation of privacy in the mailbox attached to the vacant house. Appellant did not own the mailbox nor the property on which it belonged. We conclude that appellant has failed to establish any proprietary or possessory interest in the area from which the crack cocaine was seized." Id. at 5.
 {¶ 34} Here, appellees clearly have established a proprietary and possessory interest in their apartment and designated mailbox. Therefore, they possessed the right to exclude others from access to the mailbox in question. This avails them a right to an expectation of privacy in that area, and Heffernan's warrantless search unreasonably violated that right.
 {¶ 35} The motive behind the warrantless search of the mailbox adds to its unreasonableness. There was no evidence that Heffernan believed information concerning Berry and/or contraband would be found in appellees' mailbox. Heffernan's sole explanation for searching the mailbox was to verify that appellees lived there. Under the circumstances, there were a number of nonintrusive means to accomplish that end. When undertaking a warrantless search, the reasonableness of such an action must be viewed in light of the governmental interest justifying the intrusion and weighed against the constitutionally protected rights of the private citizen. Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 1880, citing Camara v. MunicipalCt. (1967), 387 U.S. 523, 534-535, 536-537, 97 S.Ct. 1727, 1735. In that light, Heffernan's search and intrusion into appellees' mailbox is clearly not justified by his attempt to verify residency.
 {¶ 36} Furthermore, in Heffernan's affidavit, he refers to the informant as a CRI, which he is not. The title of CRI is the highest of a gradient of titles given to reflect an informant's veracity. The gradient ranges from the least reliable source — an anonymous tipster — to the most reliable — a CRI. Informants can only gain the title of CRI if they relay information that secures a certain number of arrests, indictments, and convictions, among other things. Here, Heffernan had never met or worked with this informant before. Heffernan had no knowledge of the informant's veracity other than his experience in this matter. Nonetheless, Heffernan refers to the informant as a CRI in his affidavit. This is misleading to the court in weighting the credibility of the affiant's information and taints the finding of probable cause.
 {¶ 37} Appellant argues that the trial court erred by failing to apply the good faith exception, as announced by United Statesv. Leon (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 67, and followed by State v. Wilmoth (1984), 22 Ohio St.2d 251. InWilmoth, supra, the Ohio Supreme Court held:
 {¶ 38} "The exclusionary rule should not be applied to suppress evidence obtained by police officers acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." Id., syllabus.
 {¶ 39} This good faith exception cannot apply in this case. The search warrant ultimately fails due in part to the affiant officer's misleading information provided in obtaining the warrant. The false labeling of informant as a CRI pollutes the affidavit by trying to support its credibility with false characterizations. Appellant cannot now assert a good faith argument.
 {¶ 40} We find that the trial court did not err in granting the appellee's motion to suppress and complied with the applicable legal standard. The trial court's findings were supported by competent and credible evidence. Appellant's sole assignment of error is therefore overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Blackmon, J., Concur.