THE STATE OF OHIO, APPELLANT, *v.* WILLIAMS, APPELLEE.

[Cite as State *v.* Williams (1983), 4 Ohio St. 3d 74.]

(No. 82-229—Decided March 30, 1983.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Gary W. Johnson,* for appellant.

*Mr. Hyman Friedman,* county public defender, and *Mr. Steven E. Elder,* for appellee.

CELEBREZZE, C.J. This appeal poses the issue of whether the state, under the circumstances of this case, was required to disclose the identity of the informant to appellee, a criminal defendant.

Appellee argues that his rights to a fair trial and to confront his accusers were violated by the trial court's ruling that the informant would remain anonymous. On the other hand, the state suggests that the informant's testimony would not be helpful in preparing a defense and that the state's interest in protecting the identity of the informant is paramount.

In *State* v. *Phillips* (1971), 27 Ohio St. 2d 294 [56 O.O.2d 174], we held that resolution of the question of whether the identity of an informant must be disclosed involves the balancing of competing interests. With respect to the criminal defendant, the fairness of the trial of an accused depends, in large part, on the ability of the defendant to confront his accusers. A fundamental component of the right to confront one's accusers is the opportunity to cross-examine the witnesses against him. *Pointer* v. *Texas* (1965), 380 U.S. 400. Despite the importance of the right of confrontation, under certain circumstances that right will be subject to the state's right to preserve the anonymity of informants. The underlying rationale for this "informant's

privilege" was well-stated by Justice Corrigan in *State* v. *Roe* (1971), 26 Ohio St. 2d 243, 246 [55 O.O.2d 480]:

"* * * The purpose of the privilege is the furtherance and protection of the public in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and, by preserving their anonymity, encourage them to perform that obligation." See *Roviaro* v. *United States* (1957), 353 U.S. 53, 59.

Generally, when the degree of participation of the informant is such that the informant virtually becomes a state's witness, the balance swings in favor of requiring disclosure of the informant's identity. Conversely, where disclosure would not be helpful or beneficial to the accused, the identity of the informant need not be revealed. *State* v. *Beck* (1963), 175 Ohio St. 73 [23 O.O.2d 377], reversed on other grounds (1964), 379 U.S. 89; *State* v. *Roe, supra,* at page 247; *State* v. *Phillips, supra,* at page 298. Accord *Roviaro* v. *United States, supra.*

The balance which must be struck between these competing interests is indeed a fine and delicate one which of necessity dictates a case by case analysis. We find that the facts of the case at bar do not compel disclosure of the identity of this informant.

In *State* v. *Phillips, supra,* we required disclosure of an informant's identity in the context of an illegal drug transaction. However, *Phillips* clearly represents a situation distinct from the instant cause and does not mandate a similar result. The key difference between *Phillips* and today's case is that in *Phillips,* the informant and the accused completed the drug transaction in a motel room out of the sight of the police. In that case, the state attempted to base a prosecution solely on the testimony of a police officer who saw the informant enter the motel room with marked money and exit with narcotics supposedly purchased therein, without disclosing the identity of the informant. One can easily see the inherent dangers in a situation where: the informant has made a drug purchase in association with a police investigation, the state seeks to preserve the identity of the informant, and there are no other possible witnesses to the transaction other than the informant and the accused. The case *sub judice* presents no such inherent dangers.

In the case at bar, the testimony of Mr. K is in no way as critical as that of the informant in *Phillips.* Here, the transaction between appellee and the informant was witnessed, in its entirety, by a police officer in close proximity to the event. Moreover, the police officer testified that, at all times, Mr. K's hands were in plain sight so as to eliminate the possibility that Mr. K may have switched the packet given him by appellee for one containing cocaine. Thus, this is not a situation where proof of an element of the crime is dependent upon the testimony of the informant. It therefore cannot be said that this informant, without testifying, was actually a witness for the prosecution who was not subject to cross-examination.

Additionally, appellee exercised his prerogative not to present a defense

and his privilege not to take the stand on his own behalf. Even so, appellee suggests that the testimony of the informant would be relevant to this defense simply because the informant was the man who had been nearest to him and took part in the transaction. Appellee also contends that the informant's testimony may have been relevant to a defense of entrapment or mistaken identity. We note initially that Detectives Nagy, Copeland and Rospierski all positively identified appellee as the individual in the car with Mr. K when the drug transaction took place. Consequently, there is more than sufficient record evidence that appellee was the individual seated in the informant's car. With respect to the spectre of a possible entrapment defense, we are not inclined to speculate on the relevance of the informant's testimony since the defense of entrapment was not raised at trial.

For the foregoing reasons, we hold that the identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges. However, the circumstances of this case do not warrant the disclosure of the identity of the informant who participated in the transaction which led to appellee's arrest and convictions.

Accordingly, the judgment of the court of appeals is reversed and the convictions are reinstated.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN, J., dissents.

WILLIAM B. BROWN, J., dissenting. In my opinion, the trial court erred in refusing, after a timely request by defense counsel, to order disclosure of the informer's identity and thus I respectfully dissent.

As the facts recited by the majority so indicate, the informant herein played a critical role in the sequence of events that resulted in appellee's conviction. Indeed, the impetus for the investigation was the informant's initial tip to the police that appellee was selling cocaine within East Cleveland. The informant's role did not end at this stage, however. Pursuant to the prearranged police plan, the informant actively participated in the controlled drug buys, first by arranging for the sale and then by acting as the courier of the drugs and money.

At trial, the mainstay of the state's case was the testimony of the police. Only one of the officers who testified viewed the entire transaction. This officer did not, however, hear the conversation between the appellee and the informant, or take part in the actual physical exchange of the drugs and the money. The two other officers who testified observed the transaction only

from a distance and could only corroborate testimony regarding the staged meetings. Although the informer was an immediate and active participant and an eyewitness to the entire transaction, he was not produced at trial, nor was his name revealed.

Appellee, as a defense, asserted mistaken identity.

In these circumstances, where the testimony of the officers squarely conflicts with the claim of the appellee as to identity, elementary or at least fundamental fairness requires that appellee be given access to the testimony of the informer, through revelation of his identity. For, as the United States Supreme Court stated in *Roviaro* v. *United States* (1957), 353 U.S. 53, 60-61, "[w]here the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege of * * * [withholding disclosure] must give way."[2]

Existing Ohio case law also compels disclosure of the identity of this informant. In *State* v. *Phillips* (1971), 27 Ohio St. 2d 294, 298 [56 O.O.2d 174], this court not only endorsed a rule similar to that in *Roviaro,* holding "* * *. that the state has the privilege to withhold the identity of an informer, unless the disclosure would be helpful and beneficial to the accused in making a

---

[2] There is some question as to whether the *Roviaro* decision stated a constitutional principle binding on all courts or a rule of evidence to be followed by the federal courts. In this regard the following observations of Professor Peter Westen are persuasive:

"While explicitly based on the Court's supervisory jurisdiction over the lower federal courts, *Roviaro's* reasoning and language suggest that the decision was also constitutionally compelled. The Court first concluded that the government had a sufficient interest in preserving the confidentiality of its sources of information to support a federal 'informer's privilege.' It then defined the scope of the privilege, concluding that the privilege did not extend so far as to allow concealment of exculpatory testimony from the defendant in criminal cases. Significantly, however, the Court did not deny that a contrary result would serve the government's interest; indeed, the most frequent and acute pressure on the government to reveal its sources probably comes from criminal defendants. Rather, it held that the scope of the privilege is limited by 'the fundamental requirements of fairness' and 'the individual's right to prepare his defense.' In short, while the Court defined the scope of the federal privilege on nonconstitutional grounds by weighing the two conflicting interests, one of those interests—giving the defendant the 'right to prepare his defense'—is constitutionally based and would compel the same result on constitutional grounds.

"The lower courts, and at least one member of the Supreme Court, have taken the result in *Roviaro* to be constitutionally compelled. Although *Roviaro* purports to define only a federal rule of evidence, state courts have treated it as binding. Federal courts have reversed state convictions on the implicit assumption that the rule is constitutionally based. Some courts have assumed that it derives from the defendant's constitutional right to a 'fair trial' under the due process clause. Others have recognized, however, that the defendant's right to produce the informer is part of his right of compulsory process. To prosecute a person while withholding material witnesses in his favor is indeed 'unfair,' not only in some general due process sense, but in the specific sense that it denies him access to evidence of his innocence. This is precisely the kind of unfairness the framers intended to prohibit by adopting the compulsory process clause." (Footnotes omitted.) Westen, The Compulsory Process Clause, 73 Mich. L. Rev. 73, 165-166.

I would agree with Professor Westen that disclosure of an informer's identity is constitutionally based. I would acknowledge, however, that not all jurisdictions concur. Consequently, this case could serve as a vehicle for the United States Supreme Court to resolve the issue.

defense to a criminal charge lodged against him," citing *State* v. *Beck* (1963), 175 Ohio St. 73 [23 O.O.2d 377] (reversed on other grounds [1964], 379 U.S. 89), but also found "* * * the grasp of the problem and legal solution in *Roviaro* * * * [to be] persuasive," noting in particular that the *Roviaro* standards deemed disclosure of an informant's identity a defense necessity.[3]

The majority herein attempts to take the present case out of the scope of *Phillips* and *Roviaro* by stressing that the informer was not the sole participant other than the appellee in this drug transaction. Admittedly, the transaction herein occurred in view of the police whereas the transaction in *Roviaro* did not. This factor, contrary to the majority's view, is neither dispositive nor compels a contrary result.[4] While the majority's position of denying disclosure because of the existence of other witnesses may, at best, find some support in the facts of *Roviaro,* it finds no support in the language of that decision. For, the central concern of the court in *Roviaro* was clearly that the informer "* * * was the only witness in a position to amplify or contradict the testimony of government witnesses. * * * [The informer] had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity * * *. The desirability of calling * * * [him] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." 353 U.S., at 64. Clearly, then, the thrust of *Roviaro* is that an informer's identity must be disclosed whenever his relationship to the events in question is such as to render him a material witness on the issue of defendant's guilt. Accord, *e.g., People* v. *McShann* (1958), 50 Cal. 2d 802, 330 P. 2d 33, 36; *Gilmore* v. *United States* (C.A. 5, 1958), 256 F. 2d 565, 567. Thus, the majority's position that the factual differences between *Roviaro* and the instant case compel dissimilar results is not well founded, and disclosure will be required if the informant is deemed to be a material witness.

The majority, in response to appellee's contention that the informant's testimony may have been relevant to a defense of mistaken identity,[5] stated as follows: "Appellee also contends that the informant's testimony may have been relevant to a defense of * * * mistaken identity. We note initially that

---

[3] The court, in this regard, stated in full, at page 298, as follows:

"It is interesting to note the standards in *Roviaro* when evaluating the need for disclosure of an informer's identity as a defensive necessity. At page 62 therein the opinion states:

" 'Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'

"Further at page 63, in discussing the import of the informer's potential value to the trial, the court said, 'The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the defense.' "

[4] In *Roviaro,* disclosure of the identity of the informer was compelled.

[5] The majority also notes appellee contends the disclosure of the identity of the informer was relevant to the defense of entrapment but states that this issue was not raised at trial.

Detectives Nagy, Copeland and Rospierski all positively identified appellee as the individual in the car with Mr. K when the drug transaction took place. Consequently, there is more than sufficient record evidence that appellee was the individual seated in the informant's car."

The court's logic assumes, in effect, that the witnesses' testimony as to the transaction is infallible and indisputable. This is indeed an untenable assumption. Further, appellee's need for the testimony of the informant was great. The informant herein was the only *lay* witness who could possibly refute the identification made by the police. And as was observed in *State* v. *Nafziger* (Mo. App. 1975), 534 S.W. 2d 480, 482, "[i]n a case involving an identity question, mere presence of the informant and the opportunity to observe the alleged violator and, therefore, be in a position to either support the State's identification testimony or weaken it, becomes critical."[6] Thus, there is little question that the testimony of an informer-participant, since it may contradict the testimony of the state's witness, is material to the defense of the accused.

The majority also seems to accord significance to the fact that the appellee did not take the stand in his own defense to assert a denial or mistaken identity. Putting aside the obvious constitutional violations the majority's statement imports, this logic assumes that the testimony presented can be balanced by appellee's denial, an unrealistic conclusion in light of the fact that the witnesses presented were law enforcement officers.

In the instant case, the informer was a principal actor before and during the staged drug transactions. He was instrumental in bringing about the transactions, and his participation contributed to an atmosphere of confidence. As an eyewitness and a participant, his testimony would have borne directly on the guilt or innocence of the accused. The identity of the informant and his knowledge of the events were certainly material and relevant, for he was the one person who could resolve the disputed issue of the identity of the narcotics seller. "In this testimony there might have been the seeds of innocence, of substantial doubt, or overwhelming corroboration. As the inferences from it covered the full spectrum from innocence to guilt, the process of truth-finding, which should be the aim of every trial, compelled its disclosure." *Gilmore* v. *United States, supra,* at page 567.

For the foregoing reasons, I conclude that the disclosure of the identity of the informant was "essential to a fair determination" on the facts and issues of this case, and would thus affirm the holding of the court of appeals that the trial court erred in failing to require disclosure.

---

[6] In *Nafziger* the accused defended himself on the basis of mistaken identity. The informant's identity was ordered revealed since he was the only witness to the drug transaction other than the police officer and a person known only as "Bill." The court, at page 483, found that the informant's testimony was "highly relevant" and "critical" to the identity of the drug seller.