[Cite as *State v. Holloman*, 2011-Ohio-4236.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 95896

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## VINCENT HOLLOMAN

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-529098

BEFORE:     Sweeney, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 25, 2011

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik, Esq.
Cuyahoga County Public Defender
By: Nathaniel McDonald, Esq.
Asst. Public Defender
301 Lakeside Avenue, Suite 400
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: John Wojton, Esq.
        Nicole Ellis, Esq.
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶ 1} Defendant-appellant, Vincent Holloman ("defendant"), appeals his drug possession conviction. Defendant asserts his conviction was not supported by sufficient evidence, was against the manifest weight of the evidence, that the trial court applied the wrong definition of possession, and

that his Sixth Amendment right to confront witnesses was violated because the state did not reveal the identity of the confidential informant. Defendant also challenges the court's imposition of costs. For the reasons that follow, we affirm.

{¶ 2} Defendant waived his right to a jury trial. At the bench trial, the following evidence was introduced:

{¶ 3} On September 16, 2009, the Cleveland Police Department Vice Unit was conducting undercover drug operations in the area of East 116th and Buckeye. Det. Hall testified that he was working undercover along with several other officers that day. He and Det. Roddy met with a confidential informant who was searched prior to entering the undercover vehicle. Det. Hall drove the informant to the area of E. 116th and Buckeye and gave the informant marked money. The informant exited the car and was told to wait to be contacted to make a street level drug buy.

{¶ 4} The informant got out of the car around 9:00 p.m. Det. Hall observed the informant talking with defendant, who was a passenger in a car that was parked outside of a liquor store. Another man exited the liquor store and started talking to the informant. That man, who was later identified as co-defendant Kavin Taylor, got in the driver's seat of the vehicle and the informant got in the rear of the car. The vehicle proceeded east on

Buckeye and turned left on E. 117th. The informant then exited the car and returned to Det. Hall's undercover vehicle. The informant was out of Det. Hall's sight for a brief period between exiting defendant's car and re-entering Det. Hall's car.

{¶ 5} Upon returning to Det. Hall, the informant was searched again and had some crack cocaine. Other officers stopped the suspect vehicle. Det. Hall did not observe any transactions that occurred inside the suspect vehicle.

{¶ 6} Although defendant's counsel attempted to elicit the identity of the informant, the court sustained the state's objection.

{¶ 7} Det. McKay testified that he participated in the take down of Taylor's vehicle. He assisted in handcuffing defendant and searching the car where he "observed a bag of crack cocaine sitting on the seat underneath [defendant]." He indicated the bag was under defendant's left thigh as he was being removed from the vehicle. According to McKay, Taylor put the car in reverse and hit a vehicle behind him. Det. McKay said that Taylor attempted to climb over defendant to exit the car but the officers pulled him out of the driver's side of the vehicle before he could do so.

{¶ 8} Lieutenant Holmes also participated in the take down of Taylor's vehicle. To him, it looked like the occupants were trying to jump out of the

car. Taylor put the car in reverse and hit his car. Lt. Holmes ran to the passenger side and was pulling defendant out of the car when he noticed a bag of cocaine on the car seat. The drugs were underneath defendant. Lt. Holmes said he focused on the passenger side of the vehicle and never saw Taylor trying to climb over defendant.

{¶ 9} Detective Raspberry testified that his vehicle was positioned in front of Taylor's vehicle during the take down. Det. Raspberry's view was on the passenger side of Taylor's vehicle. He saw Taylor jumping around and saw a lot of shuffling. Taylor reversed his car and hit the car behind him. Det. Raspberry pulled Taylor out of the car as Taylor was trying to jump over defendant. Taylor's upper body made it towards defendant's lap on the passenger side before he was pulled from the car. Defendant was also jumping around in the car. Det. Raspberry found the buy money in Taylor's pocket.

{¶ 10} Kavin Taylor testified on behalf of the defense. According to him, he encountered defendant at the liquor store and was giving him a ride home. He did not remember if defendant was sitting in the car alone without him. Taylor said both the gun found in the console and the drugs found underneath defendant's leg belonged to him. Taylor said he found the gun and he did not know how the drugs got underneath defendant's leg. Taylor

adamantly denied ever trying to climb over defendant during the take down. Yet, he speculated that the drugs may have fallen off his lap and onto defendant as he was reaching to shut the door. Taylor denied ever selling drugs on any other occasion and claimed that the $1,700 found in his pocket was money he had saved from the $600 per month social security income he had been receiving for his condition of "AD/HD."

{¶ 11} Taylor said he had a gun despite his prior felony conviction because he had been shot in the leg five times. He denied that the shooting had anything to do with drug activity. Taylor also denied putting his car in reverse but said he was trying to throw it in park. According to Taylor, he was "snatched out the car and punched and stomped * * *." When the state asked him to identify state's Exhibit 6, which was the bag of drugs found underneath defendant, Taylor said, "I don't know what that is." When the prosecutor asked, "[t]his is what you are claiming that you had," Taylor promptly responded, "It's it then."

{¶ 12} Taylor claimed he had purchased the drugs that night. But, Taylor was unable to identify where he had purchased it, offering only, "I just be walking up to any off-brand people." He also did not know how much it had cost and instead estimated "[l]ike $100 probably." When asked if he intended to smoke the entire contents of Exhibit 6 himself, Taylor said he had

intended to smoke it all that night by himself. Exhibit 6 contained 3.23 grams of crack cocaine.

{¶ 13} The trial court acquitted defendant on all counts with the exception of count one, drug possession. The court specifically found that defendant possessed the drugs and noted that Taylor had adamantly denied making any attempt to climb over defendant during the take down. Defendant raises five assignments of error for our review:

{¶ 14} "Assignment of Error I: Mr. Holloman's conviction is not supported by legally sufficient evidence as required by State and Federal due process."

{¶ 15} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 16} Defendant asserts that the evidence is insufficient to establish the element of possession necessary to sustain his conviction.

**{¶ 17}** "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K)

**{¶ 18}** In this case, the drugs were found underneath defendant's leg. Although police believe they saw Taylor attempting to lunge over defendant, Taylor adamantly denied it. While Taylor did speculate that it may have dropped onto defendant's lap, it was not on defendant's lap, it was under his leg. Construing the evidence in a light most favorable to the state, as we must, the evidence supports defendant's conviction for drug possession.

**{¶ 19}** Defendant relies on this court's decision in *State v. Bush*, Cuyahoga App. No. 81959, 2003-Ohio-4054, in urging reversal. In *Bush,* this court observed:

**{¶ 20}** "Constructive possession is proved by showing that the defendant was able to exercise dominion and control over the contraband. *State v. Trembly* (2000), 137 Ohio App.3d 134, 141, 738 N.E.2d 93. 'Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may constitute constructive possession.' Id."

**{¶ 21}** The facts at issue in *Bush* are very different than the instant matter. In *Bush*, the police smelled PCP and observed a passenger in a

vehicle holding an amber vial, which he placed under the seat. Bush was not the passenger but the driver of the vehicle. A cigarette was found outside of the vehicle. This court held the evidence was insufficient to support a drug possession conviction against Bush because there was no evidence that he had access to or possession of the PCP. *Bush*, 2003-Ohio-4045, ¶12. In this case, defendant was not only in the vicinity of the drugs, they were underneath his leg. Further, while Taylor claimed ownership of the drugs, he did not initially recognize them in court, he could not recall where he purchased them or what he had allegedly paid for them.

{¶ 22} This case is also distinguishable from *State v. Murphy*, Cuyahoga App. No. 93093, 2010-Ohio-1422, upon which defendant also relies. In *Murphy*, the undisputed facts were that the driver attempted to pass the drugs to Murphy who tried to pass them back, but ultimately the drugs landed on the floor. Immediately, Murphy informed the police that the driver had tried to put the drugs on him. The issue before this court was whether "Murphy's momentary *involuntary possession* when the drugs were forced on him by the driver was sufficient possession to constitute a violation of R.C. 2925.11(A)." (Emphasis in original.) Id. at ¶9. Here, there is conflicting testimony as to whether Taylor attempted to climb over defendant or not. Taylor speculated that the drugs could have fallen off his lap, but he

denied any attempt to climb over defendant. Ultimately, the drugs were not found on the floor or defendant's lap. No one saw the drugs being passed back and forth or transferred at all. They were found underneath defendant's leg on the passenger seat where he was sitting. It was reasonable for the trier of fact to find that defendant knowingly possessed the drugs found under his person and that his control over the drugs was voluntary.

{¶ 23} This assignment of error is overruled.

{¶ 24} "Assignment of Error II: The trial court erred when it failed to apply the proper definition of possession to the facts."

{¶ 25} "Assignment of Error III: The Defendant's conviction is against the manifest weight of the evidence."

{¶ 26} To warrant reversal of a verdict under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Thompkins*, supra.

{¶ 27} First, defendant takes exception with the trial court's observations that the drugs were found under his leg on the car seat, that "a person would be aware of that," that defendant had access to the drugs, and

that he could have obtained, possessed, or otherwise controlled that crack cocaine. From this defendant infers that the trial court misapplied the law with regard to the element of possession and found him guilty of drug possession based solely upon his mere access to the drugs. We do not agree.

{¶ 28} In this bench trial, the court observed that the facts "circumstantially support[ed] allegations of drug trafficking" on defendant's part, however, he was acquitted of those charges because the court found the evidence did not establish it beyond a reasonable doubt. Likewise, the court acquitted defendant of the weapons charges because the vehicle did not belong to defendant, and there was no evidence that defendant was aware of the weapon found in the armrest of the vehicle even though the court found that defendant "had access to it." The court observed that the "law requires more than having access. The law requires some mental process and awareness." From these statements of the law, it is clear that the trial court was well versed on the law of possession and properly applied it in rendering its verdicts.

{¶ 29} While the trial court found defendant not guilty of the weapons charges based on mere access to the gun, it found defendant was guilty of possessing the drugs found under his leg. The court explicitly noted that "the State's evidence" offered defendant "his best hope of avoiding that charge

or conviction on that charge (for drug possession) and that is that Mr. Taylor tried to escape from the vehicle by climbing over Mr. Holloman and exiting through the passenger door. Of course, Mr. Taylor adamantly denied that, although more than one police officer described it, but the Court is not willing to suggest or accept the suggestion perhaps made by defense counsel that those drugs could have in that fashion ended up on the passenger seat." From these statements on the record, it is clear that the trial court rejected the defense theory that defendant involuntarily possessed the drugs or that they somehow fell under his leg. The trial court found that defendant had knowing and voluntary control over the drugs that were found under his leg.

{¶ 30} Having thoroughly reviewed the record, defendant's conviction for drug possession is supported by the evidence, and the trial court did not clearly lose its way in finding defendant guilty of possessing the drugs found underneath his leg.

{¶ 31} These assignments of error are overruled.

{¶ 32} "Assignment of Error IV: Mr. Holloman's conviction violates his Sixth Amendment Right to confront witnesses and to present his defense because the State did not reveal the identity of the confidential informant."

{¶ 33} In this case and during cross-examination, defense counsel asked an officer to identify the informant. The court sustained the state's objection

to this inquiry, and the informant's identity was not revealed. We review this error by applying the abuse of discretion standard. *State v. McKoy*, Cuyahoga App. No. 93363, 2010-Ohio-522, ¶10, citing, *State v. Bays*, 87 Ohio St.3d 15, 1999-Ohio-216, 716 N.E.2d 1126.

**{¶ 34}** It is well settled that the government enjoys the privilege to withhold the identity of informants that aid in the enforcement of the law. *Roviaro v. United States* (1957), 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639. This privilege, however, is subject to certain limitations. In *Rovario*, the court held that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61.

**{¶ 35}** The United States Supreme Court declined to adopt a fixed rule with respect to disclosure. Id. at 62. Instead, the court preferred to balance "the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." In *Roviaro*, the court further reasoned that "[t]he desirability of calling [the

informant] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than for the government to decide." (Emphasis added.) Id. at 64.

**{¶ 36}** In accordance with *Roviaro*, the Ohio Supreme Court has held that "[t]he identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to a criminal charge." *State v. Williams* (1983), 4 Ohio St.3d 74, 446 N.E.2d 779, paragraph one of the syllabus. In *Williams*, the court focused on the degree of the informant's participation in determining whether the competing interests outlined in *Roviaro* favored disclosure. Id. at 76, 446 N.E.2d 779.

**{¶ 37}** Defendant asserts that the trial court abused its discretion by depriving him of the opportunity to cross-examine the informant. Defendant maintains the State used the informant to convict him of drug possession and that knowing the identity of the informant would have helped him prepare his defense.

**{¶ 38}** Defendant points to officer Hall's testimony that he observed the informant talking to defendant prior to the drug buy. However, the trial court did not rely on this testimony and in fact acquitted defendant of the

drug trafficking charge notwithstanding this testimony. Arguably, the state's failure to provide the informant's testimony aided defendant's ability to defend the charges against him. Defendant also suggests that the informant's identity was important to his defense because the informant was the only source for the information that a drug deal had occurred. Again, defendant was acquitted of drug trafficking and his conviction for drug possession was not based on any information relevant to the informant's identity. For these reasons, we find the facts at issue in *State v. Pope*, Cuyahoga App. No. 81321, 2003-Ohio-3647, are distinguishable.

{¶ 39} Defendant's argument that the identity of the informant would have helped him prepare for trial is not persuasive. Defendant did not seek the disclosure of the informant's identity until questioning witnesses at trial, therefore, the utility of the information towards aiding his trial preparation, if any, was irrelevant. The record in this case does not support defendant's contention that the informant was essentially a state's witness as to the drug possession charge for which defendant was convicted. This assignment of error is overruled.

{¶ 40} "Assignment of Error V: The trial court erred in imposing court costs based on its mistaken belief that court costs were mandatory in this case."

**{¶ 41}** R.C. 2947.23 requires the imposition of court costs as a part of the criminal sentence, even if the defendant is indigent. Only other statutory authority may allow the suspension of costs. However, the trial judge has discretion to waive costs assessed against an indigent defendant. *Cleveland v. Tighe*, Cuyahoga App. Nos. 81767 and 81795, 2003-Ohio-1845. An indigent defendant must move the trial court to waive payment of costs at the time of sentencing. If the defendant makes such a motion, then he preserves the issue for appeal, and the appellate court will review the issue on an abuse-of-discretion standard. *State v. Hughley,* Cuyahoga App. No. 90323, 2009-Ohio-3274, ¶12.

**{¶ 42}** The trial court properly imposed costs in accordance with the law. Although defense counsel requested that they be waived due to defendant's alleged inability to pay, the trial court did not abuse its discretion in denying this request. This assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

JAMES J. SWEENEY, JUDGE

MELODY J. STEWART, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR