[Cite as *State v. Calhoun*, 2012-Ohio-2374.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26144 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| HOMELL T. CALHOUN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 01 0027 (A) |

DECISION AND JOURNAL ENTRY

Dated: May 30, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Homell Calhoun, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} On December 29, 2010, members of the Akron Police Department's narcotics unit observed Calhoun engage in a hand-to-hand drug transaction with a female outside Brubaker's Pub. The police stopped the female, Barbara Wilfred, after she left the scene and confirmed that she had purchased heroin from Calhoun. Based on Wilfred's admission, the drug transaction they observed, and prior intelligence they had collected on Calhoun, the police decided to stop Calhoun. Because Calhoun already had driven away with another woman, the police stopped the woman's car and conducted pat down searches. The police found heroin, syringes, and a spoon when they searched the woman and later found approximately 25 baggies of heroin in Calhoun's pants.

**{¶3}** At some point after the police stopped Wilfred and confirmed that she had purchased heroin from Calhoun, two officers decided to go to Mayflower Manor Apartment 1011. According to several police officers, several weeks before the hand-to-hand transaction with Wilfred took place a confidential informant shared information that Calhoun kept a large amount of drugs in that apartment. According to Calhoun, the police learned of the apartment after they questioned him in the absence of a *Miranda* warning. The police searched the apartment with the consent of Nicole Sleeth, the apartment's tenant and Calhoun's acquaintance. Inside the apartment they found a safe, which Sleeth identified as Calhoun's. The police then got a warrant for the safe and searched it. The safe contained over 360 grams of heroin and $19,000.

**{¶4}** A grand jury indicted Calhoun on numerous drug charges, several of which arose from the contents of the safe. Calhoun filed a motion to suppress, and the court conducted a suppression hearing. Numerous times during the course of the suppression hearing, Calhoun asked the court to order the State to disclose the identity of the confidential informant who allegedly told the police about Apartment 1011. Calhoun averred that (1) the police actually learned about the apartment from the answers they elicited in violation of his *Miranda* warnings, and (2) the success of his motion hinged upon testing the veracity of the alleged informant. The trial court refused to order the disclosure of the informant and denied Calhoun's motion to suppress. Calhoun ultimately pleaded no contest to reduced charges and received nine years in prison.

**{¶5}** Calhoun now appeals from the trial court's denial of his motion to disclose the identity of the informant and raises one assignment of error for our review.

## II

### Assignment of Error

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISCLOSE THE IDENTITY OF A CONFIDENTIAL INFORMANT[.]

{¶6}   In his sole assignment of error, Calhoun argues that the trial court erred when it refused to order the State to disclose the identity of its informant.  We disagree.

{¶7}   "This Court will not disturb a trial court's ruling on a motion to disclose a confidential informant's identity absent an abuse of discretion."  *State v. Smith*, 9th Dist. No. 21069, 2003-Ohio-1306, ¶ 62.  An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8}   "The [S]tate has a privilege to withhold from disclosure the identities of those who give information to the police about crimes."  *State v. Bays*, 87 Ohio St.3d 15, 24 (1999).

> "The purpose of the privilege is the furtherance and protection of the public in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and, by preserving their anonymity, encourage them to perform that obligation." [*State v. Roe*, 26 Ohio St.2d 243, 246 (1971).]

*State v. Williams*, 4 Ohio St.3d 74, 76 (1983).  Even so, the privilege gives way "when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges."  *Id.* at syllabus.  A request for disclosure requires a trial court to balance the confrontation rights of the accused against the State's privilege to protect its citizen informants in light of the facts and circumstances of each case.  *Smith* at ¶ 63.  If disclosure "would not be helpful or beneficial to the accused, the identity of the informant need not be revealed."  *Williams* at 76.  "The defendant bears the burden of establishing the need for disclosure."  *Smith* at ¶ 63.

{¶9} Three officers testified at the suppression hearing, and all three stated that Calhoun was not the source of the information about Apartment 1011. Sergeant Jason Malick and Detective Michael Zimcosky testified that the search of Apartment 1011 commenced before Calhoun was even taken into custody. Detective Zimcosky specified that he received information about Calhoun from a confidential informant a few weeks before the search occurred. Specifically, a controlled buy took place between the confidential informant and Calhoun in early December, and Detective Zimcosky gained information from that exchange. He testified that he never spoke with Calhoun on the day of his arrest, but decided to act upon the informant's tip and go to Apartment 1011 after he learned that his fellow officer had witnessed Calhoun sell drugs to Wilfred.

{¶10} Sergeant Malick confirmed that he gave Detective Zimcosky permission to go to Mayflower Manor before the police stopped Calhoun. He testified that the information about the apartment came from Detective Zimcosky's confidential source. Indeed, Sergeant Malick stated that he did not even know which apartment number Detective Zimcosky planned on investigating because it was Detective Zimcosky who had the connection to the informant. Sergeant Malick further testified that once the police brought Calhoun back to the station, he told Calhoun that officers were searching Apartment 1011. Sergeant Malick observed that Calhoun visibly reacted to the news and "seemed very surprised that we knew about the apartment."

{¶11} Calhoun testified to a radically different version of events. He testified that officers handcuffed him and asked him questions about his address without Mirandizing him. He further claimed that, once he told the officers about Apartment 1011, they kept him handcuffed on the scene for approximately 45-60 minutes while they intermittently searched the apartment and returned to question him further about the apartment and the safe they found.

Calhoun also claimed that one of the officers threatened to kick him in the stomach during the incident.

{¶12} The trial court denied Calhoun's motion to disclose after concluding that the informant merely provided information concerning Calhoun's offense. *See Bays*, 87 Ohio St.3d at 25, quoting 3 LaFave & Israel, *Criminal Procedure*, Section 23.3, at 19 (1984) ("'[W]here the informant merely provided information concerning the offense,' the courts 'have quite consistently held that disclosure is not required.'"). In so holding, the court noted that the informant was not a witness to or participant in any of the transactions relevant to the charges and did not provide information vital to establishing any particular element of the charges. The court determined that Calhoun's motion "center[ed] only upon his need to raise collateral credibility challenges to the testimony of police officers concerning the details of his arrest * * *."

{¶13} Calhoun maintains that the disclosure of the confidential informant's identity is the only way to resolve "material issue[s] of fact" in this case because only through the informant's testimony is it possible to know how the police learned of his connection to Apartment 1011. The fact of the matter is, however, that either the police learned about the apartment from an informant or they learned about it from Calhoun. All three police officers maintained that the information came from the informant, and Calhoun maintained it came from him. The testimony of the informant only would have added to or detracted from the credibility of the officers at the suppression hearing. As the trial court properly noted, the informant was not a witness to any of the events that transpired on the day of Calhoun's arrest. Once the police went to Apartment 1011 they conducted a valid search of its contents and the safe that led to the charges at issue here. "The revelation of the name of the informer and the information supplied

by him [or her] would not alter the fact of defendant's guilt. And a mere desire to test the credibility and reliability of the informer is hardly a compelling consideration in the circumstances narrated." *State v. Beck*, 175 Ohio St. 73, 77 (1963), *rev'd on other grounds*, 379 U.S. 89 (1964). In reviewing the record, we cannot conclude that the trial court abused its discretion by determining that the informant "merely provided information concerning the offense" to the police. *Bays* at 25, quoting 3 LaFave & Israel at 19, Section 23.3. As such, the court did not err by denying Calhoun's motion to disclose. Calhoun's sole assignment of error is overruled.

### III

**{¶14}** Calhoun's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                        _____
                                        BETH WHITMORE
                                        FOR THE COURT

DICKINSON, J.
BELFANCE, J.
CONCUR.

APPEARANCES:

DONALD J. MALARCIK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.