[Cite as *State v. Petty*, 2023-Ohio-1146.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 111930 |
| v. | : | |
| LAMAR PETTY, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** April 6, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-667718-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ayoub Dakdouk, Alaina Hagans, and Anthony T. Miranda, Assistant Prosecuting Attorneys, *for appellant*.

Jeffrey S. Richardson, *for appellee*.

LISA B. FORBES, J.:

{¶ 1} In this accelerated appeal, the state of Ohio ("the State") appeals the trial court's journal entry granting Lamar Petty's ("Petty") motion to disclose

identity of informant. After reviewing the facts of the case and pertinent law, we reverse the trial court's decision.

## I.    Facts and Procedural History

{¶ 2}    On February 7, 2022, Cleveland Police arranged a controlled buy of drugs between a confidential informant ("CI") and a man in a black Chevy Equinox. After the controlled buy took place, the man in the Equinox drove away, and the police followed him, then pulled him over. Police found drugs and a gun on the man, who was later identified as Petty.

{¶ 3}    The case information form that the police filed states the following under "Details of Offense": "On Monday, February 7, 2022, at 1830 hours, and at the location of 3621 W47, the defendant, [Petty] knowingly possessed over 5 grams of heroin and 5 grams of crack along with a loaded hand gun." On March 1, 2022, Petty was indicted with seven felonies: two counts of having weapons while under disability, improperly handling firearms in a motor vehicle, two counts of drug trafficking, and two counts of drug possession.

{¶ 4}    On June 16, 2022, Petty filed a motion to disclose identity of informant. In this motion, Petty summarily argued that he "may consider an entrapment defense * * *." The court held a hearing on Petty's motion on September 7, 2022, after which the court granted the motion. This court granted the State leave to appeal from the trial court's decision.

## II.  Motion to Disclose C.I.'s Identity

{¶ 5}   The Ohio Supreme Court has held that "the identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *State v. Williams*, 4 Ohio St.3d 74, 77, 446 N.E.2d 779 (1983).  "[T]he burden is on the defendant to show that the need for the testimony of the informant outweighs the government's interest in keeping the identity of the informant secret." *State v. Brown*, 64 Ohio St.3d 649, 653, 597 N.E.2d 510 (1992).  Furthermore, this court has held that "the defendant must set forth more than mere speculation that 'the informer might somehow be of some assistance in preparing the case.'"  *State v. Evans*, 8th Dist. Cuyahoga No. 101485, 2015-Ohio-1022, ¶ 26, quoting *State v. Parsons*, 64 Ohio App.3d 63, 69, 580 N.E.2d 800 (4th Dist.1989).

{¶ 6}   We review a trial court's decision regarding disclosure of a CI's identity for an abuse of discretion.  *See State v. Garcia*, 8th Dist. Cuyahoga No. 67858, 1995 Ohio App. LEXIS 3467 (Aug. 24, 1995).

## III.  Hearing on Motion to Disclose CI's Identity

{¶ 7}   The hearing at which counsel presented argument revealed the following.

### A. Argument from Defense Counsel

{¶ 8}   According to defense counsel, the CI called a person known as "Cash" to arrange a "controlled buy" of "some narcotics."  The details of the transaction,

including the quantity of drugs and the dollar amount of the sale, are not known. The CI was driven to the agreed-upon location. There, he got "in a black Chevy Equinox with the person they believe to be Cash." According to Petty's counsel, "there is simply no way * * * that the undercover detectives could hear or see what was going on inside of that car." Counsel stated that "no wire was affixed to the CI, no video recording device. So whatever occurred in the car is not observable to anyone who might just be watching."

{¶ 9} Defense counsel stated that the CI "report[ed] back to the detectives who conveyed him to this buy site * * *. It's indicated that he turns over some amount of drugs. Again it's not stated how much, what they are believed to be, but he indicates that * * * he has purchased these drugs from the person in that car that he knows only as Cash." According to Petty's counsel, the CI is the only person who can identify Petty as the person he bought drugs from.

{¶ 10} Petty drove away after the controlled buy. Police pulled Petty's vehicle over in front of a house on W. 47th Street. Petty's "vehicle is searched and the detectives recover a fairly low weight of suspected drugs and there I believe is a .380 handgun in the coat pocket of the person that * * * they've identified as * * * Petty."

{¶ 11} Counsel explained, and the trial court agreed, that "controlled buys are not usually conducted for the benefit of creating a criminal charge. * * * They are generally done as a means of getting a search warrant normally for a house." Counsel argued that the instant case "is different but for the involvement of the [CI],

there would have been no legal basis to engage * * * Petty on the street as he was engaged."

{¶ 12} Counsel further argued that the CI's identity would help Petty's defense as follows:

> I don't know what happened in [Petty's] car, * * * and I don't know what happened before that CI entered [Petty's] car.
>
> * * *
>
> I don't know [if] planted is necessarily the right word, * * * but I have no reason to rule out what may have occurred in that car in terms of asking him to hold something, asking him to do something for him.
>
> * * *
>
> And again, there's no record in discovery of anything specific relating to this [CI].
>
> I don't know how he became a CRI versus a CI.[1] There's no record of his past interaction with law enforcement and I'm not aware there's any video of what occurs pre-controlled buy.
>
> * * *
>
> But this is a different situation when within seconds or minutes of interacting with a police informant [Petty] is stopped and searched and there was no monitoring of what happened in that car. It could not have been seen. It could not have been heard.

---

[1] As stated, "CI" stands for confidential informant. "CRI" stands for confidential reliable informant. "The title of CRI is the highest of a gradient of titles given to reflect an informant's veracity. The gradient ranges from the least reliable source — an anonymous tipster — to the most reliable — a CRI. Informants can only gain the title of CRI if they relay information that secures a certain number of arrests, indictments, and convictions, among other things." *State v. Beltran*, 8th Dist. Cuyahoga Nos. 86359 and 86360, 2006-Ohio-1085, ¶ 36.

## B. Argument from the State

{¶ 13} According to the prosecutor, in the case at hand "a CRI was used to do a controlled buy. Prior to doing the controlled buy, the CRI was checked and he was cleared of any contraband." The police "sent the CRI in with identifiable money. Detectives were watching the CRI from that point on up until the buy and after the buy." According to the State, the CRI met with Cleveland Police Detective Larry Smith after the buy and provided "what he had just purchased from Cash, AKA * * * Petty." The police pulled Petty over as he was driving the Chevy Equinox in which the controlled buy just took place. Police asked Petty to step out of the vehicle, and he did. Police found a ".380 handgun" in Petty's right pocket and "two * * * different bags of * * * drugs on his person." Police also recovered two cell phones.

{¶ 14} The State argued that "the fact that the actual buys themselves [involving the CI] were not charged in this case" weighs in favor of not disclosing the CI's identity. Additionally, the prosecutor stated the following regarding the public policy behind withholding the identity of CIs: "informers often frequent the vicinity where crime is planned and the revelation of an informer's name would not only destroy his access to information concerning criminal activities, but might also result in his sudden demise, thereby discouraging other[s] from becoming informers and coming forward."

## IV. The Trial Court's Findings

{¶ 15} After the arguments were presented at the motion hearing, the court acknowledged that this case involved a balancing test of "the accused['s] right to

confront and cross-examine his accuser against the public interest in protecting the flow of information regarding criminal activity to law enforcements." The court found that this case was "unique" because whether, and how, the CI was allegedly searched before getting into Petty's vehicle "is a question up to the defense and the cross-examination of the detective to see how accurately he was searched, but that's a question for the jury to determine."

{¶ 16} The court stated that the CI "leaves [Petty's] car and * * * only minutes later [Petty's] pulled over based on the [CI] coming back with buy money and drugs." The court determined that "[t]he issue here has now become is the informant a necessary material witness in this scenario." The court infers that Petty's argument is as follows: "we need this CI because we believe the CI planted, brought the drugs to the car or the gun to the car." The court concluded that "based on what I heard * * *, I'm going to order the State to disclose the CI for purposes of this case to allow [defense counsel] to proceed with his defense of * * * Petty. And I do believe the CI is material to the facts in this case."

## V.   Analysis

### A. *Williams* — First Prong

{¶ 17} We start with the first prong of the *Williams* test — whether "the testimony of the informant is vital to establishing an element of the crime." In the case at hand, Petty was charged with nine counts of various felonies related to a gun and drugs that police found on his person after they pulled him over. The police officers found these items, as noted in the case information form that was filed in

conjunction with this case, *after* the CI served his purpose. In other words, the CI's identity, and thus testimony, is not needed to establish the elements of the offenses with which Petty was charged. *See Williams*, 4 Ohio St.3d at 74, 446 N.E.2d 779 (holding that disclosure of the identity of the CI was not warranted when the crime "was witnessed, in its entirety, by a police officer in close proximity to the event"); *State v. Payne*, 11th Dist. Lake No. 2004-L-118, 2005-Ohio-7043, ¶ 41 (Disclosure of the CI was not required "where the informant did not actively participate in the criminal activity, or where the informant's role is that of a mere tipster.").

{¶ 18} The instant case is not a case in which the CI's testimony would be necessary to establish the crimes at issue because Petty was not charged with selling drugs to the CI. Accordingly, Petty failed to show that the CI's identity should be revealed under the first prong of *Williams*.

## B. *Williams* — Second Prong

{¶ 19} Turning to the second prong of the *Williams* test — whether the CI's identity "would be helpful or beneficial to the accused in preparing or making a defense to criminal charges" — we focus on whether Petty set forth more than mere speculation at the hearing. *See Evans*, 8th Dist. Cuyahoga No. 101485, 2015-Ohio-1022, at ¶ 26 (requiring more than mere speculation that the identity of the informant might be helpful). In *State v. Butler*, 9 Ohio St.3d 156, 157, 459 N.E.2d 536 (1984), the Ohio Supreme Court held that "the trial judge was correct in refusing to order divulgence of the informant's identity." The *Butler* Court concluded that the defendant, in addition to the CI, "knew the details of the conversations between

[himself] and the informant * * *. The trial judge was not required to speculate as to the specifics of these conversations and relate them to the elements of entrapment." *Id.*

{¶ 20} Petty's argument that the CI's identity would help his defense is vague and undeveloped. Specifically, counsel stated that he did not know what happened when the CI was in Petty's car, and he had "no reason to rule out what may have occurred in that car in terms of asking him to hold something, asking him to do something." *See Garcia*, 8th Dist. Cuyahoga No. 67858, 1995 Ohio App. LEXIS 3467 ("The mere allegation of entrapment is not, alone, sufficient to justify allowing the appellant access to the identity of the informant.").

{¶ 21} In the case at hand, defense counsel further argued that "if there is not a police agent able to describe what occurred between the informant and the suspect whether it be by recording, video, proximity, if what occurred and the actual exchange cannot be described, then the informant must be disclosed." This argument is not supported by any legal authority. First, we note that the "actual exchange" between the CI and Petty is not the basis of the criminal charges in this case. Second, defense counsel's argument is not part of the test that Ohio courts apply when ruling on a motion to disclose the identity of a CI.

{¶ 22} Defense counsel additionally suggested that the court should have held an in camera review to determine whether the CI's identity would have been helpful. However, the Ohio Supreme Court has held that an "'in camera hearing is necessary only when "the defendant makes an initial showing that the confidential

informant may have evidence that would be relevant to the defendant's innocence."'" *State v. Bays*, 87 Ohio St.3d 15, 25-26, 716 N.E.2d 1126 (1999), quoting *State v. Allen*, 27 Wash.App. 41, 48, 615 P.2d 526 (1980), quoting *State v. Potter*, 25 Wash.App. 624, 628 611P.2d.1282 (1980).

{¶ 23} Upon review, we find that Petty failed to show, under the second prong of the *Williams* test, that the CI's identity would be helpful or beneficial to his defense, because, at the time of the motion hearing, his arguments were no more than speculation. Petty knows what happened in his car. The police officers know what happened with the CI prior to the transaction that occurred in Petty's car. Petty does not need the CI's identity to, at least, explore these issues prior to developing a theory that is more than speculation.

## VI. Conclusion

{¶ 24} In the case at hand, Petty failed to show, under both prongs of the *Williams* test, that the CI's testimony was necessary or would be beneficial to his case. Furthermore, Petty failed to meet his burden to show that the need for the CI's testimony "outweighs the government's interest in keeping the identity of the informant a secret." *Brown*, 64 Ohio St.3d at 653, 597 N.E.2d 510. Petty's failure to meet the *Williams* and *Brown* tests does not warrant disclosure of the CI's identity. *See Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35 ("[T]he common understanding of what constitutes an abuse of discretion [is] a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.").

{¶ 25} Accordingly, we find that the trial court abused its discretion by granting Petty's motion to disclose the identity of the CI, given the information and arguments that were presented at the motion hearing. The State's sole assignment of error is sustained.

{¶ 26} Judgment reversed. Case remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

SEAN C. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS

MARY EILEEN KILBANE, P.J., DISSENTING:

{¶ 27} I respectfully dissent from the majority opinion.

{¶ 28} As correctly stated by the majority, the issue presented to this court — the trial court's decision on a motion to disclose a CI's identity — is subject to an abuse of discretion standard. *Bays*, 87 Ohio St.3d 15, 716 N.E.2d 1126.

{¶ 29} "Abuse of discretion is an extremely high standard; it demands that the trial court exhibited a 'perversity of will, passion, prejudice, partiality, or moral delinquency.'" *Devito v. Grange Mut. Cas. Co.*, 2013-Ohio-3435, 996 N.E.2d 547, ¶ 21 (8th Dist.) (Jones, J., dissenting), quoting *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993), citing *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984). "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Blanton*, 8th Dist. Cuyahoga No. 109294, 2021-Ohio-65, ¶ 26, citing *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 30} A trial court must analyze the facts of each case to determine whether disclosure of an informant's identity is warranted. *Williams*, 4 Ohio St.3d at 76, 446 N.E.2d 779. Here, the trial court conducted a hearing and specifically found the informant's identity was relevant due to "the circumstances involved in this unique case." Tr. 31. The state represented that the police searched the CI before the CI entered Petty's vehicle but there was no video or audio recording of that occurrence. No one except the CI and Petty were privy to the interactions that occurred within the confines of Petty's vehicle. The trial court determined that the CI was a material witness who could testify as to whether he possessed drugs and/or a firearm when he entered Petty's vehicle. Based upon the unique facts in this matter and the application of the abuse of discretion standard, I would defer to the trial court's judgment.

{¶ 31} For these reasons, I respectfully dissent.